## ALMON BRAINARD *vs.* HENRY W. CLAPP.

The proprietors of a railroad have a right to cut the trees growing on the strip of land which they have taken for their road, whether such trees are for shade, ornament, or fruit, and whether such cutting be at the time of laying out their track, or afterwards; and there is no burden of proof on such proprietors, to show, in their justification, that the trees are cut for the purposes of their road.

· THIS was an action of trespass brought in the court of common pleas, and there tried before *Mellen,* J. against the defendant, as the agent and servant of the Connecticut River Railroad Company, for cutting fifteen trees, described as trees for fruit, ornament, or shade, growing on the plaintiff's land. The facts of the case, and the instructions of the judge, so far as the same are necessary to be stated, are sufficiently set forth in the opinion of the court.

The case was argued and decided as of the September term, 1851.

*C. P. Huntington,* for the defendant.

*A. Brainard* (*D. Aiken* with him,) for himself.

SHAW, C. J.    This is an action of trespass *quare clausum.* The ground of the plaintiff's complaint, as set forth in various counts is, that the defendant unlawfully entered on the plaintiff's land, and caused trees, to the number of fifteen, to be cut down and destroyed.    The defendant, with the general issue, filed a specification of defence, justifying the alleged trespass, as the president, agent, and servant of the Connecticut River Railroad Company, on the ground that the acts complained of were done within the limits of land taken by said company, for the construction of the railroad, by virtue of the rights and powers vested in them by their charter, and that said alleged acts of trespass were committed in the necessary use and enjoyment of the franchise granted to them by law.    The defendant specifies other grounds, for the company disclaims all title to the land out of their limits of five rods, or any easement therein.

It appears by the bill of exceptions that the action was brought for cutting down walnut and cherry trees growing

Brainard *v.* Clapp.

on the close of the plaintiff, for use, ornament, shade, and fruit. The cutting complained of was within the limits of the five rods, laid out over the plaintiff's land by the railroad company, and for which his damages had been assessed and paid.

The defendant claimed that the trees obstructed the view of the track near the depot in the village of Greenfield, and it was necessary to the safety of the road and those using it, and working on it, that this obstruction should be removed. The court ruled that the defendant could justify only on the ground, that the acts complained of were necessary to carry out the objects and purposes intended by their charter, and that the burden of proof was on the defendant to prove such necessity.

Without following the bill of exceptions minutely, it may be sufficient to say that the court ruled that if the trees standing within the limits of the land taken for the road were an obstruction, or made the track unsafe or inconvenient to the company or their agents, the defendant, as the agent of the company, had a right to cause them to be cut down; that in judging of the safety and convenience of the road, the acts of the company were entitled to a favorable construction; that the company had the exclusive right to the use of the plaintiff's land taken, so far as it was necessary to carry into operation all the objects embraced within the scope of their act of incorporation; but the officers of the company were not the sole and exclusive judges of what was to be removed from the land taken, but the necessity of the removal might be judged of by the jury; and if there were clearly no necessity for such removal, then the defendant would be responsible for cutting the trees in question. To these directions the defendant excepted, and the case has now been brought before this court for revision.

In a general view of the law, the court are of opinion that, *primâ facie*, the railroad company are authorized to do all acts within the five rods, which by law constitute their limits, in taking away or leaving gravel, trees, stones, and other objects, which in their judgment may be necessary and proper to the

grading and levelling the road, in adjusting and adapting it to other roads, bridges, buildings, and the like, so as to render it most conducive to all the public uses which the railroad is designed to accomplish.   Whatever acts therefore, are requisite to the safety of passengers on the railroad, to the agents, servants, and persons employed by the company, and to the safe passage of travellers on and across highways and roads connected with it, and which can be done within the limits of five rods, the company have a right, under their act of incorporation, to do.   This is embraced in the idea of "taking" land for public use.   It is an appropriation of the land to all the uses of the land for the road, necessary and incidental. This appropriation the company are authorized to obtain by purchase, if it can be done ; but if the owner refuses, then the company, by their officers and engineers, have the right and power to lay out the land, paying a compensation to the owner therefor, to be adjusted and settled, first, by commissioners, and ultimately by a jury ; and practically the damages are commonly equal to the value of the land.   To this extent the power of the public, under the right of eminent domain, to provide for carrying into effect a proposed public enterprise for the common good, is transferred to the company, and their decision therefore must be definitive, except when, under special provisions of law, they are bound to conform to the directions of the company's commissioners or other officers appointed for the purpose.

In the case of *Worcester* v. *Western Railroad Corporation,* 4 Met. 564, it was held that a railroad company had a right to erect buildings within the five rods if reasonably incident to the use of the road, and that they had authority, acting for the public, to make all the uses of the land which would facilitate the public use, that of the transportation of persons and property.

Several of the authorities go to show that where land is thus taken and paid for, for public use, the public, or those corporations who act as agents and trustees for the public, have a right to make all the use of the land which the necessity and convenience of the public may require, and that the land-

Brainard *v.* Clapp.

owner receives in damages a compensation which in theory of law is an indemnity for all such uses. *Stevens* v. *Middlesex Canal,* 12 Mass. 466. So in *Callender* v. *Marsh,* 1 Pick. 431, the court say, streets become public property by the act of laying them out, and the value of the land taken must have been either paid for or given to the public at the time, or the street could not have been legally established. And being legally established, although the right or title in the soil remained in the owner, yet the public acquired the right not only to pass over the surface, but to dig down and remove soil, for the purpose of improvement.

This was so far afterwards altered by statute, as to allow an adjacent owner some compensation in case of change of grade; but that does not affect the principle on which that decision rested.

So in the case of *Robbins* v. *Borman,* 1 Pick. 122, the court recognize the principle, that the owner of land over which a turnpike passes, still retains his title, and may have an action against a stranger who ploughs it. But, say the court, if the ploughing had been for the purpose of mending the road, it would have been a good defence. This plainly implies that such ploughing, being done under the authority of the proprietors, would be justifiable.

So in *Tucker* v. *Tower,* 9 Pick. 109, though a turnpike company have an easement only, and do not acquire a fee in the soil, yet within the limits of the road as laid out, they may make any use of the land which is necessary for the enjoyment of the franchise; they may erect a toll-house, a dwelling-house for the toll-man, may dig a cellar and a well, cut down trees, and the like.

It appears to us that the cases cited on the other side do not impugn these principles. They certainly do establish the point that, by the common law, the fee of the soil over which a public way of any kind is laid remains in the owner; that he is entitled to the herbage and trees growing on it, and the minerals under it; but they hold in like manner, that the use is in the public, or those who represent and act for the public, that this includes all the uses incident to the accomplish-

ment of the public objects for which their charters had been granted; and if these, in their nature require the cutting down and removal of trees, such rights vest in the public. *Barclay* v. *Howell*, 6 Pet. 498.

This rule is general, and applies to all cases where land is taken for highways, townways, turnpikes, canals, and railroads; the principle is, that such right extends to all uses, directly or incidentally conducive to the enjoyment of the franchise, and the advancement of the public benefit, contemplated by the establishment of such public work. But it is quite obvious that, though the principle is general, the extent of such use must vary, not only according to the exigencies of each particular kind, but to the varying circumstances of each species of public work. A canal, for instance, must have a towing-path as necessarily incident; roads must have drains and culverts, and a railroad, turnouts, platforms, depots, and the like. And it is obvious that railroads, with their engines and trains, from their complicated character and peculiar mode of operation, may require more and larger uses of the land for running and managing trains safely, than other public ways; but what they do require is within the limits of the grant, and, where they are not especially prescribed or limited, must be determined by the nature of such exigency. And if trees are found to be dangerous in running cars, by obstructing the view of engineers and conductors up and down the track, in approaching depots, crossing highways on the same grade or otherwise, the company have the same right to cut them down, standing within their limits, as if they tended to obstruct the passage of trains, and thus endanger their safety.

And the court are also of opinion, that the right and power of the company to use the land within their limits, may not only be exercised originally, when their road is first laid out, but continues to exist afterwards; and if, after they have commenced operations, it is found necessary, in the judgment of the company, to make further uses of the land assigned to them, for purposes incident to the safe and beneficial occupation of the road, by raising or lowering grades, cutting down

hills, and removing trees, they have a right to do so to the same extent as when the railroad was originally laid out and constructed. All the reasons of necessity, propriety, and fitness, which apply to the one case are equally applicable to the other. And we think the authorities equally apply. *Callender* v. *Marsh*, 1 Pick. 431, was the case of a street and ancient high-way. *Tucker* v. *Tower*, 9 Pick. 110, was the case of a turnpike, where a new use was made of the land, by erecting a toll-house, and cutting trees for that purpose, long after the road was established.

The case of railroads may be regarded as standing on somewhat stronger grounds in this respect, for several reasons, because railroads are extremely costly, and proprietors cannot in the outset make and complete all the works which they contemplate and intend to make; because these works are comparatively new, and improvements are constantly making in the structure and management of the works, and thus companies may profit by their own experience, and that of others; and because an increase in the business of carrying passengers and freight, may call for new works after the roads have gone into operation, and these are new exigencies calling for a new use of the land assigned to them.

In applying these views of the law to the present case, the court are of opinion that the directions of the learned judge were incorrect, in several respects. We think they were thus incorrect in directing, in the outset, that the defendant could justify only on the ground that the acts complained of were necessary to carry out the objects and purposes intended by their charter, and that the burden of proof was on the defendant to prove the necessity.

Further; although the learned judge did instruct the jury, that the company had the exclusive right to the use of the plaintiff's land so taken, as far as necessary, yet it was connected with another direction, in which he instructed the jury that the officers of the company were not the sole and exclusive judges of what was to be removed from the land taken, but the necessity of the removal might be judged of by the jury, and if there were clearly no necessity for such

removal, then the defendant would be responsible for cutting the trees. Whereas, we think the jury ought to have been instructed that the company had a right, under the powers given them by their act of incorporation, to cut down the trees in question, as one of the acts to be done on the land within the five rods, to fit and prepare the track for the safe and convenient use of it, for the transportation of persons and freight by cars and locomotive engines; that they were the judges of what this exigency required, and that if the defendant, being their agent for this purpose, cut down the trees by their authority, he was justified in doing so. And also, that such authority might be given by the company to their president, agents, and officers, either by by-laws, providing for the appointment of such officers, and defining their powers, or by a general or particular vote, or by any other mode by which an aggregate corporation can express its will and exercise its powers.

Without going over the whole of the bill of exceptions, the court are of opinion that the verdict must be set aside, and a new trial had.                                        *Verdict set aside.*