## ÆTNA MILLS vs. INHABITANTS OF WALTHAM.

Middlesex.   Jan. 11, 1878. — March 17, 1879.   AMES & LORD, JJ., absent.

Under the St. of 1872, c. 337, authorizing the town of Waltham to take the waters of Charles River, for the purpose of supplying the inhabitants of the town with pure water, and providing that a person injured by such taking may apply by petition to the Superior Court, and that the court may, "upon default or hearing of said town," appoint three disinterested persons to assess the damages sustained by the petitioner, their award to be final, unless either party shall demand a trial by jury, the merits of the controversy between the parties are not to be gone into at the hearing upon a motion for the appointment of commissioners; but the court is to ascertain whether a case is presented which requires the appointment of commissioners, and to determine who are suitable persons to be appointed.

Under the St. of 1872, c. 337, authorizing the town of Waltham to take the waters of Charles River, water-rights connected therewith, and lands necessary for the purpose of supplying the inhabitants of the town with pure water, neither the petition of a person injured by such taking nor the verdict of the jury awarding damages need allege that the town has complied with § 2 of the statute, requiring the town to file in the registry of deeds a description of the property taken.

If a town takes the waters of a stream, under a statute authorizing it so to do, for the purpose of supplying the inhabitants of the town with pure water, it is no defence to a petition for damages sustained by a person injured by such taking, that the town owned a parcel of land adjoining the stream, and that the inhabitants of the town had been accustomed, from time immemorial, to use the waters of the stream for drinking and domestic purposes.

Under the St. of 1872, c. 337, authorizing the town of Waltham to take the waters of Charles River and water-rights connected therewith, for the purpose of supplying the inhabitants of the town with pure water, and providing in § 3, that, if the owner of property taken or person sustaining damages "shall not agree on the damages to be paid therefor," he may file a petition for the assessment of his damages, the filing of a petition shows the election not to agree, and no previous attempt at an agreement is necessary.

Under the St. of 1872, c. 337, authorizing the town of Waltham to take the waters of Charles River, for the purpose of supplying the inhabitants of the town with pure water, the town voted to accept the act, and to take the water from the river, to the amount of one million of gallons a day. It also dug a filtering basin on land near the river, taken under the act, pumped the water from this basin to a reservoir and distributed it to the inhabitants. A portion of the water in the basin came by percolation from the river and the rest from underground streams intercepted by the basin on their way to the river. *Held*, that there had been a taking of the waters of the river, within the meaning of the act, to the amount of one million of gallons a day; and that a person whose water-rights had been injured by such taking was entitled to recover for the injury to the market value of his property arising from the diversion of that quantity of water.

ENDICOTT, J.   The town of Waltham was authorized by the St. of 1872, c. 337, to take the waters of Charles River, or Stony

Brook, to an extent not exceeding a million and a half gallons daily, for the purpose of supplying itself and its inhabitants with pure water, and to take land, and construct and maintain all works necessary for its distribution. The town voted to accept the act, and to take water from Charles River to the amount of a million gallons daily, which vote was duly recorded, under § 13. In pursuance of this vote, the town took a parcel of land bordering on the river, constructed a filter basin from which water is pumped into a reservoir and distributed to its inhabitants. The petitioner, being the owner of a mill situate on the river, filed this petition in the Superior Court for the assessment of damages to its property caused by the withdrawal and diversion by the town of a million gallons of water daily from the river. The respondent appeared and filed an answer; and a motion having been made for the appointment of commissioners, as provided in § 3, the respondent objected to the appointment on the ground that it had the right to be heard, on the defences set up in its answer, before the appointment. It was admitted at that hearing that the town had taken land bordering on the river, had constructed works, and was distributing water therefrom, as previously stated; but denied that the water came from the river, or belonged to the petitioner. The court overruled the objection, and appointed the commissioners, whose award was afterwards accepted by the court. The respondent then claimed a trial by jury, which was had, and a special verdict returned; and the case comes before us on the respondent's exceptions.

1. The first exception is to the appointment of the commissioners. Section 3 of the act provides that " the said court may, upon default or hearing of said town, appoint three disinterested persons, who shall, after reasonable notice to the parties, assess the damages, if any, which such petitioner may have sustained; " their award when accepted by the court to be final, unless either party shall demand a trial by jury.

This clause is not intended to provide for a hearing upon the merits of the controversy between the parties, but to ascertain whether a case is presented which requires the appointment of commissioners, and to determine who are suitable persons to be appointed. The presiding judge was not called upon to

pass upon the question whether the waters of Charles River had been taken by the respondent, and whether any damage had been inflicted on the petitioner. This inquiry involved questions of fact. If he should find against the petitioner on that question, the statute makes no provision for appeal, or for revision of his finding; while it does provide that the question of damages shall not be finally determined against either party without the right of trial by jury; and trial by jury cannot be had until after the case has been sent to commissioners, and their award returned into court. See *Dwight Printing Co.* v. *Boston*, 122 Mass. 583. The commissioners, therefore, were properly appointed.

2. The respondent contends that the court erred in ordering judgment on the special verdict, because the petition did not allege, and the special verdict does not find, that the water of the river was taken according to the provisions of § 2, by filing in the registry of deeds " a description thereof sufficiently accurate for identification, with a statement of the purpose for which the same is taken, signed by the water commissioners " of the town. It is to be observed that the objection raised is not that the description was not filed, and the record does not in terms show that it was not filed, but the objection is that it does not appear in the petition or the verdict that such a description was filed. The petitioner, on the other hand, contends that this provision of § 2 does not apply to the taking of the water of the river; but that § 13 contains the provisions under which the water of the river is to be taken. The statute is inartificially and carelessly drawn, and §§ 2 and 13 contain obscure and perhaps conflicting provisions; but, assuming that it was the duty of the commissioners to file such a statement under § 2, and conceding that the petition does not allege, and the verdict does not find, that they did so, we are of opinion that, upon the case as presented, the respondent cannot avail itself of this objection.

The special verdict finds that the town accepted the act, decided to take the water of Charles River to the extent of a million gallons daily, which vote was duly recorded as provided in § 13. The verdict also finds that, under and by virtue of the provisions of the act, the town took land bordering on the river, made a basin therein from which water was pumped into a reservoir and distributed to the inhabitants for the purposes

named in the act. It therefore sufficiently appears that the town had exercised the rights, and was in the actual enjoyment of the privileges, conferred by the statute; and, while exercising these rights and enjoying these privileges, it cannot now avail itself of the purely technical objection, that it does not appear either in the petition or the verdict that its agents complied with the requirements of § 2, and thereby defeat the claim of the petitioner for damages. It is not necessary that the petition should allege, or the verdict find, that every step in the proceedings on the part of the town or its agents was taken as provided in the statute. Having acquired, under the statute, all the powers conferred, it is to be presumed that all the requirements of the statute have been complied with, and that a proper description of lands, ponds and water-rights taken under § 2 had been filed.

3. Nor can the right of the petitioner to recover damages for water diverted from its mill be impaired or affected because the town, as the owner of a farm bordering on the river, had the rights of a riparian proprietor in the waters of the stream; or because any of the inhabitants who chose had been accustomed to use the water of the river, from time immemorial, for drinking and domestic purposes, and for extinguishing fires, without interference or hindrance from any person.

We are not called on to consider what may be the rights of riparian proprietors to take water from the river for the purpose of selling it or disposing of it to other persons for any purpose, as the town took the water, not as a riparian proprietor, but by virtue of the powers conferred by the statute; and, as it took the water as a corporation, it is entirely unimportant what may have been the custom of its individual inhabitants to take water therefrom for domestic and other purposes. The statute does not limit or deprive the riparian owners of any legal right they may have in the waters of the stream; or restrain the individual inhabitants of the town from taking the water, according to their custom, if they have the right so to do; but it confers a new privilege on the town as a corporation, and provides that it shall pay all damages caused by the exercise of that privilege.

4. Under § 3, which provides that if the owner of property taken or person sustaining damages "shall not agree on the

damages to be paid therefor," he may file a petition for the assessment of his damages, it is not a condition precedent to the right to file such petition that it should appear that the parties did not agree upon the damages to be paid; the filing of the petition shows the petitioner's election not to agree, and no previous attempt is necessary. *Burt* v. *Brigham*, 117 Mass. 307.

5. It is also contended by the respondent, that it is not liable to the petitioner for taking the water from its filter basin, which percolates from the land adjacent, and which is intercepted by the basin before it reaches the river. The special verdict finds that a part of the water in the filter basin, which is pumped into the reservoir to be distributed to the inhabitants, comes from underground currents in the bank flowing towards the river; and a part percolates into the basin from the river itself; but the jury were unable to determine what portion came from the underground currents, and what portion came from the river.

But, for reasons stated at length in *Bailey* v. *Woburn*, *ante*, 416, we are of opinion that the rights of the owners of land to appropriate to their own use underground currents of water are not involved in this inquiry. The town has by its vote determined and declared that it will take the waters of the river to the extent of a million of gallons daily, has constructed works for that purpose, and by these works has withdrawn the water to supply its inhabitants; and it is found by the jury that a portion of this water, so distributed, comes from the river. It is immaterial that all the water thus taken does not come from the river itself. The town has acquired the right, and has built works enabling it, to take from the river a million gallons daily, and is exercising that right by actually withdrawing from the river all the water which for the time being is necessary for its purposes. That it may rightfully draw from the river the full measure of one million gallons daily cannot be questioned; and if the owner of the land above, from which the underground currents flow into the basin, should appropriate them to his own use, then the respondent would be obliged to draw all the water from the river for its supply.

We are therefore of opinion that the town has taken the waters of Charles River within the meaning of the act; and as

the damages to the petitioner can be assessed but once, the petitioner is entitled to recover damages for injury to the market value of its property, arising from the diversion of that quantity of water which the town, under the authority of the statute, has declared its purpose to take. *Ipswich Mills* v. *County Commissioners*, 108 Mass. 363.                *Exceptions overruled.*

*B. F. Butler*, for the respondent.

*T. L. Livermore*, (*E. R. Hoar* with him,) for the petitioner.