### ÆTNA MILLS *vs.* INHABITANTS OF BROOKLINE.

Suffolk. March 26, 27. — June 26, 1879. AMES & LORD, JJ., absent.

Under the St. of 1872, *c.* 343, authorizing the town of Brookline to take the waters of Charles River, " for the use of said town and the inhabitants thereof, not exceeding one and a half millions of gallons daily," and providing that the town should be liable in damages to any person injured by such taking, the town voted to accept the act, and to draw from the river the above amount. It also constructed a water-gallery on land near the river, taken under the act, pumped water from this gallery and distributed it to the inhabitants. After the gallery was substantially completed, but before any water was taken from it for the use of the town, the owner of the land taken conveyed it to the town by a quitclaim deed. A portion of the water in the gallery came by percolation from the river through the natural soil between the gallery and the river. *Held,* that there had been a taking of the waters of the river, within the meaning of the act; that it was immaterial whether, at the time the water was withdrawn, the town held the land taken by purchase, or by the right of eminent domain; and that a person whose property had been injured by such taking was entitled to indemnity.

ENDICOTT, J. This case arises upon a statute similar to those recently passed upon by this court in the cases of *Bailey* v. *Woburn*, 126 Mass. 416, and *Ætna Mills* v. *Waltham*, 126 Mass. 422; and the facts disclosed in the bill of exceptions do not so materially differ from the facts presented in those cases as to distinguish this case, and to require us to sustain the exceptions taken by the respondent.

In *Bailey* v. *Woburn*, the town had taken land on the border of Horn Pond, and constructed a water-gallery and other works

for supplying its inhabitants with water from the pond, under the St. of 1871, c. 307; and had made a direct connection between the gallery and the pond by conduits and pipes, from which gallery water was distributed under the authority of the statute.  Having enlarged the area of the pond and secured to the town against all persons the means of taking its waters by the works thus constructed, from which water was actually distributed, it was held to be immaterial that it had not made use of the pipes and conduits leading from the pond to the gallery, and it was therefore held that the waters of the pond had been taken within the meaning of the statute.

In *Ætna Mills* v. *Waltham*, the town had constructed similar works, under the St. of 1872, c. 337, for the purpose of taking the water of Charles River for the use of its inhabitants.  An artificial embankment on the border of the stream formed one side of the water-gallery or filter-basin from which water was pumped and distributed; and a portion of the water thus distributed flowed through the embankment from the river; and this was held to be a taking of the water of the river under the statute.

In the case at bar, the respondent accepted the act of 1872, c. 343, authorizing it to take the waters of Charles River, and voted to draw from the river a million and a half gallons daily.  See St. 1875, c. 127.  It also, under the powers conferred by the statute, took land near the river and constructed a water-gallery therein, from which water was afterwards pumped for the use of its inhabitants, before the filing of this petition.  After the works were substantially completed, but before any water was taken from them for the supply of the town, the owner of this land conveyed it to the town by a quitclaim deed.  The respondent made no connection with the river by pipes or conduits, as in *Bailey* v. *Woburn;* nor did the water flow into the gallery from the river through an artificial embankment, as in *Ætna Mills* v. *Waltham;* but it is agreed, as appears by the bill of exceptions, that " Charles River was diminished by water which found its way from the same into the respondent's gallery by percolation through the ground; " that is, through the natural soil, which had not been disturbed between the gallery and the river.

The respondent contends that, being the owner of the land where the gallery is built, into which flows the water of the river by percolation through the natural soil, it has the same right to appropriate the water so obtained as a private individual would have to appropriate the underground currents of water found upon his own land. Numerous cases are referred to in support of the position thus taken, among them· the recent case of *Wilson* v. *New Bedford,* 108 Mass. 261, and cases there cited. It is well settled that water, which flows or percolates underground in undefined channels, belongs to the owner of the soil, and he may by a well or other artificial structure appropriate it to his own use, although by so doing he may arrest it on its way to his neighbor's land, or draw it from his neighbor's land into his own. Such water on the land is as much his property as the land itself. But a very different question is presented where the owner of land constructs his well or other structure in such manner as to create an artificial underground current of water from a running stream, thus withdrawing the water of the stream into his own land, under the claim that of right he is entitled to the water thus found in or coming to his land. It was held by Lord Hatherley in *Grand Junction Canal Co.* v. *Shugar,* L. R. 6 Ch. 483, that the water of a stream flowing in a defined surface channel could not thus be diverted by the proprietor of adjoining land. But, as this case is presented to us, it is unnecessary to rest our decision on that ground, or to consider the question at length.

The St. of 1872, *c.* 343, § 6, provides that the "town of Brookline shall be liable to pay all damages that shall be sustained by any person or persons in their property by the taking of the waters of Charles River," "or any part thereof, as authorized by this act." The town voted to take the water from the river to the extent of a million and a half gallons, took land and constructed works to enable it to do so, and by means of those works has withdrawn from the river a portion of the water it distributes to its inhabitants. In what precise method this result is accomplished is immaterial; whether by pipes and conduits enabling it to draw the water directly; or by means of an artificial embankment, through which the water passes into its water-gallery; or by placing its gallery so near the stream that its waters will

be diverted from the general current and filter through the natural bank, and thus furnish the town with its supply. In either case the waters of the stream are taken within the meaning of the statute, which in precise language provides a remedy to those whose property is injured by the diversion of the water.

The act also provides that the town may take land by purchase, as well as by the right of eminent domain. §§ 1, 6. The town did not acquire any greater rights, so far as the withdrawal of the water of the river for the supply of its inhabitants is concerned, because after it had taken the land and built its water-gallery, but before the water was withdrawn, it obtained a quitclaim deed from the owner of the land, thus converting its easement into an absolute title. The party whose property is injured by withdrawing the water is entitled to indemnity whether the town has an easement or a fee in the land where the works are constructed by which the withdrawal is effected.

We see no reason why the petition was not properly brought, and the entry must be                    *Exceptions overruled.*

*W. Gaston & C. H. Drew*, for the respondent.

*E. R. Hoar & T. L. Livermore*, (*F. P. Fish* with them,) for the petitioner.