ROBERT COWDREY & others *vs.* INHABITANTS OF WOBURN.

Middlesex. Nov. 13, 1883. — Jan. 8, 1884. C. ALLEN & HOLMES, JJ.,
absent.

The St. of 1871, *c.* 307, authorized a town, for the purpose of supplying its inhab-
itants with water, to take the waters of a great pond and the waters which
flowed into it, and any water-rights connected therewith, and to take and hold
such lands as might be necessary for erecting and maintaining dams and reser-
voirs, and for laying and maintaining pipes and other works for collecting,
conducting, and distributing said waters; provided that the town should be
liable to pay all damages that should be sustained by any person in his prop-
erty by such taking of land, water, or water-rights, or by the construction of
such works; that no application should be made for the assessment of damages
for the taking of any water-rights until the water was actually withdrawn or
diverted by the town; and that such application must be made within one year
from the time when the water was actually withdrawn or diverted. The town
accepted the statute; and took land, which was afterwards conveyed to it by
the owners, and constructed thereon a water-gallery and pumping station. It
laid pipes from the gallery to the pond, but never used them. It pumped water
for the use of its inhabitants from the gallery on a certain day, and continued
to supply water from the gallery; and, within a year from that day, the owner
of a mill privilege on a brook, which was the outlet of the pond, applied for the
assessment of his damages. *Held,* that, if a substantial portion of the water in
the gallery came by percolation from the pond, or if the water intercepted by
the works constructed by the town and used by it would otherwise have flowed
into the pond, the petition for the assessment of damages was not premature,
and could be maintained.

If the admission of certain deeds in evidence, at the trial, before a sheriff's jury,
of a petition for the assessment of damages for the taking of water-rights under
statutory authority, is excepted to, and no copies of the deeds are furnished in
the papers submitted to this court upon an appeal from an order of the Supe-
rior Court accepting the verdict, the excepting party does not show that he was
aggrieved by their admission.

By the St. of 1871, *c.* 307, §§ 1, 2, a town was authorized to take the waters of a
pond, and for this purpose to build aqueducts, and erect and maintain dams,
and make reservoirs. By § 11, it was authorized to erect and maintain a dam
at or near the outlet of the pond, so as to hold the waters of the pond at a
level not exceeding six feet above high-water mark. *Held,* that, under §§ 1, 2,
the town had the right to build a dam at the outlet so as to hold the waters
of the pond at high-water mark.

At the trial of a petition for the assessment of damages caused to the owner of a
mill privilege on a pond by the taking of the waters of the pond by a town
under the authority of a statute, which provided that no such petition should
be filed until the water was actually withdrawn or diverted by the town, the
following rule of damages was given to the jury: "First ascertain what was
the fair market value of the petitioner's mill with its water-rights appurtenant
to it, and then ascertain how much its value has been diminished by the exist-
ence of this right of the town to use now and prospectively the waters which

would otherwise come to his mill. This diminution is the sum to which the petitioner is justly entitled as compensation. To this sum add interest from the time when the water was first actually diverted." *Held*, that the respondent had no ground of exception.

PETITION to the county commissioners for a jury to assess the damages caused by the taking by the respondent, under the St. of 1871, *c.* 307, of certain water-rights of the petitioners, the owners of a mill privilege on a brook which was the natural outlet of Horn Pond, a great pond. The jury returned a verdict for the petitioners, which was accepted in the Superior Court; and the respondent appealed to this court. The facts appear in the opinion.

*W. Gaston & G. A. A. Pevey*, for the respondent.

*C. Robinson, Jr.*, (*G. A. Blaney* with him,) for the petitioners.

MORTON, C. J. The St. of 1871, *c.* 307, § 1, authorized the town of Woburn, for the purpose of supplying its inhabitants with water, to take the waters of Horn Pond and the waters which flow into it, and any water-rights connected therewith, and to take and hold, by purchase or otherwise, such land on and around the margin of the pond, not exceeding five rods in width, as may be necessary for the preservation and purity of said waters, and such lands as may be necessary for erecting and maintaining dams and reservoirs, and for laying and maintaining pipes and other works for collecting, conducting, and distributing said waters. Section 3 provides that the town shall be liable to pay all damages that shall be sustained by any persons in their property by the taking of any land, water, or water-rights, or by the constructing of any aqueducts, reservoirs, or other works for the purposes aforesaid, to be assessed in the same manner as highway damages are assessed. Section 4 provides that no application shall be made to the county commissioners for the assessment of damages for the taking of any water-rights, until the water is actually withdrawn or diverted by said town ; and that such application must be made within one year from the time when the water is actually withdrawn or diverted.

The town accepted the statute ; and, acting through water commissioners duly appointed, took two and one half acres of land on the margin of the pond, which was afterwards conveyed

and confirmed to the town by a deed from the owners, and constructed upon it a water-gallery and pumping-station. It laid pipes from the gallery to the pond, but has never used these pipes. Having completed the construction of its works, it first pumped water for the use of its inhabitants from this gallery on September 1, 1873, and has since continued to supply water from the gallery. The application to the county commissioners for the assessment of damages in this case was made on August 20, 1874.

At the trial before the sheriff's jury, the respondent contended that all the water in the gallery was supplied by percolation through the surrounding soil, and that none of it came from the pond, by percolation or otherwise; that, being the owner in fee of the land on which the gallery was situated, it owned all the water which comes to it by natural percolation through the adjoining soil; that it had never withdrawn or diverted any water from the pond; and therefore that the petitioners' application to the county commissioners was premature, and could not be maintained. There was conflicting testimony upon these points; and the presiding officer instructed the jury, that, if a substantial portion of the water in the gallery comes by percolation from the pond, and thus the water flowing to the petitioners' mill is substantially diminished, this petition can be maintained; and also that, if "the water intercepted by the wells of the respondent and used by it, would, but for such interception, have flowed into the pond, and so to the mill of the petitioners, the petition can be maintained on that ground."

There can be no doubt that the first ruling is correct. It is immaterial how the town takes the water of the pond, whether by pipes or by percolation through an artificial or natural embankment between the gallery and the pond. This point was decided in *Ætna Mills* v. *Waltham*, 126 Mass. 422, and in *Ætna Mills* v. *Brookline*, 127 Mass. 69.

We are also of opinion that the second ruling was correct. This question was not presented or decided in the case of *Bailey* v. *Woburn*, 126 Mass. 416, which arose under the same statute as the case at bar. As was said in that case, we do not now find it necessary to consider what are the rights of landowners to appropriate to their own use underground currents of water

found on their own land, or what are the exact limitations of such rights. The town of Woburn does not stand in the same position as an ordinary landowner. All its powers in the premises are derived from the statute. It has no authority to take or purchase lands for the purpose of appropriating underground currents of water without compensation to persons injured. *Attorney General* v. *Jamaica Pond Aqueduct*, 133 Mass. 361. It has the right to take the waters of the pond and the waters which flow into it, either by surface streams or underground currents, and, merely as an incident of this main purpose, the right to construct a gallery and other works for collecting and distributing the water. The Legislature did not intend that the town should take or purchase land, and, by digging a gallery or wells, intercept waters flowing into the pond, to the injury of other persons, without making compensation. On the contrary, its intention is clear, that, if the town took away water directly from the pond, or water which naturally flows into it, compensation should be made to any person injured.

The town exercised the authority conferred upon it by the Legislature; it constructed its works for taking the water of the pond; it dug a gallery and wells directly connected with the pond by pipes; it thus enlarged the area of the pond, and secured to itself the means of taking its water by the works thus constructed. When it began to pump water from the gallery, it withdrew or diverted the water of the pond, within the meaning of the statute.

The fact that the town owned the fee of the land is immaterial. Whether it took the land by purchase or by the right of eminent domain, it had the power to take it only as incidental to the purpose of taking the water of the pond for its inhabitants. It takes it in the exercise of a privilege conferred by the statute, which provides that it shall pay all damages caused by such exercise.

We are therefore of opinion, that the application of the petitioners in this case was not premature; and that the rulings at the trial upon this subject were correct.

The respondent also contended at the trial that the petitioners could not recover because they had no right to or interest in the

waters of the pond. This question was decided in *Watuppa Reservoir Co.* v. *Fall River*, 134 Mass. 267.

The respondent objected to the admission of certain deeds in evidence. We have no copies of the deeds, and the report does not furnish us with the means of intelligently considering this exception of the respondent. If the deeds were, as the presiding officer seems to have found, all parts of a chain of title of the petitioners' premises, they were admissible; if they were not, they were, so far as appears, immaterial. The respondent does not show that it was aggrieved by their admission.

At the trial, the petitioners were allowed to ask of several witnesses the following question: "If a dam was erected at the outlet of Horn Pond so as to hold the water in the pond at high-water mark, what effect would this have upon the water-power at the mill?"

The first and second sections of the statute authorize the town to take the waters of Horn Pond, and, for this purpose, to build aqueducts, erect and maintain dams, and make reservoirs. Under these provisions, the town can take all the waters of the pond in its natural condition, if necessary for its use, and may build a dam at or near the outlet so as to hold the water at ordinary high-water mark, and prevent its running to waste, if such dam is reasonably necessary for the purposes for which it is authorized to take the water.

The petitioners must recover in this proceeding all damages present and prospective caused to them by the taking; not only the immediate damages, but any future damages which may be anticipated from the prospective wants of the town, and the future exercise by it of the powers conferred by the statute. For such damages, they cannot hereafter maintain any action. *Ipswich Mills* v. *County Commissioners*, 108 Mass. 363. *Bailey* v. *Woburn, ubi supra.*

Section 11 of the statute does not affect this question. It was intended to provide for a different matter and to give authority to the town in the future, if its necessities required it, to enlarge the pond by raising it to a level not exceeding six feet above its present high-water mark. It provides for compensation, if such a dam shall be built, but does not affect the right of the town to build dams or structures, under § 2, necessary

to avail itself of the waters of the pond in its present natural condition. We therefore think the question was rightly admitted.

The rule of damages adopted by the presiding officer was accurate and correct.*

*Judgment accepting the verdict affirmed.*

---

* The instruction given was as follows: "First ascertain what was the fair market value of the petitioners' mill with its water-rights appurtenant to it, and then ascertain how much its value has been diminished by the existence of this right of the town of Woburn to use now and prospectively the waters which would otherwise come to their mill. This diminution is the sum to which the petitioners are justly entitled as compensation. To this sum add interest from the time when the water was first actually diverted."