ALBERT DODGE & others *vs.* INHABITANTS OF ROCKPORT.

Essex.    May 18, 1908. — June 15, 1908.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Great Pond.    Watercourse.    Tide Mill.    Damages.    Interest.*

Although the Legislature have the power to take the waters of a great pond for a public purpose without making any compensation to owners on streams flowing from it, yet, in granting a right to use the waters of the pond for a public purpose, such as the water supply of a town, they may, if they please, require

compensation to be made to private persons where no legal right has been interfered with.

A brook which is an outlet of a great pond, through which water of the pond has flowed to the sea for more than two hundred years with the acquiescence of all persons, has acquired the character of a natural watercourse, although the outlet connecting the brook with the great pond originally may have been an artificial channel.

The owner of a tide mill and mill dam making use of the waters of a natural watercourse, or of a stream which has acquired the character of a natural watercourse, has as much right to use the water in the way that he does as the owner of an ordinary mill has to use the water of a flowing stream in the usual way, and the fact that his dam is below high water mark and that his mill · accordingly is operated as a tide mill affects the manner of his use of the water but not his right to use it.

Section 4 of St. 1894, c. 78, an act to supply the town of Rockport with water, pro- vides that "Said town shall pay all damages sustained by any person or cor- poration in property by the taking of any land, right of way, water source, water right or easement, or by any other thing done by said town under the authority of this act." The town under the provisions of the act took the waters of Cape Pond, a great pond. The owner of a tide mill and mill dam on Mill River filed a petition for damages under the act. It appeared that a brook called Alewife Brook, one branch of which comes from Cape Pond, flows into Mill River above the petitioner's dam, that the water of Alewife Brook thus flowed into the pond created by the petitioner's dam, raising its level to a higher point and for a longer time than otherwise would be the case, and that this flow was diminished seriously by the taking of the waters of Cape Pond by the respondent. There was evidence that the present outlet of Cape Pond into Alewife Brook was the original and natural one, but there was other evidence that this outlet originally was merely an artificial channel dug before the year 1700, although it was not disputed that the waters had flowed in their present channel for more than two· hundred years. The presiding judge refused to instruct the jury that if they found that the brook connecting Cape Pond with Alewife Brook was not a natural watercourse but an artificial channel the peti- tion could not be maintained, and submitted to the jury the question whether the brook would in the course of nature flow at low tide across the flats upon which the petitioner's dam was constructed if no dam were there. *Held*, that the refusal of the instruction requested and the submission to the jury were correct ; that as the brook had flowed in its present course for more than two hundred years and all persons had acquiesced in that condition it had acquired the character of a natural watercourse and it was immaterial whether the outlet from Cape Pond originally was natural or artificial; that the rights of the peti- tioner were as great as those of an ordinary riparian owner ; that the fact that his dam was below high water mark and that his mill accordingly was operated as a tide mill, affected only the manner in which he made use of the water and not his right to use it; and that the damages caused by the diminution of the flow of water into the petitioner's mill pond could be found to be the direct and proximate result of the taking and not too remote to be recovered.

Upon a petition for damages for the taking of waters under St. 1894, c. 78, an act to supply the town of Rockport with water, § 4 of which provides that "no application for the assessment of damages shall be made for the taking of any water, water right, or any injury thereto, until the water is actually withdrawn or diverted by said town under the authority of this act," interest must be com-

puted upon the amount of damage, if any, from the time when the waters actually were diverted, and a delay in the trial of the case after the filing of the petition, when either party could have brought it up for trial, is no reason for computing the interest from any later date.

SHELDON, J. The petitioner Albert Dodge, is the owner of a tide mill and mill dam on Mill River; and a brook called by various names, among which are Alewife Brook and Cape Pond Brook, flows into Mill River above his dam. One branch of Alewife Brook comes from a great pond called Cape Pond. The defendant town has taken the waters of Cape Pond under the provisions of St. 1894, c. 78. The jury have found that the petitioner has sustained a considerable amount of damage by this taking; and the question is raised whether he is entitled to recover therefor.*

It is provided by § 4 of the statute before us that the town "shall pay all damages sustained by any person or corporation in property by the taking of any land, right of way, water, water source, water right or easement, or by any other thing done by said town under the authority of this act." If the petitioner were a riparian owner upon a natural stream flowing from Cape Pond, he clearly would be entitled to recover the damages which he has sustained. *Rockport* v. *Webster*, 174 Mass. 385, 392. *Proprietors of Mills* v. *Randolph*, 157 Mass. 345. *Howe* v. *Weymouth*, 148 Mass. 605. *Cowdrey* v. *Woburn*, 136 Mass. 409. *Watuppa Reservoir Co.* v. *Fall River*, 134 Mass. 267. The Legislature might have permitted the respondent to take the waters of Cape Pond without making any compensation to owners on streams flowing therefrom. *Watuppa Reservoir Co.* v. *Fall River*, 147 Mass. 548. But it is also true, as was said by Hammond, J., in *Rockport* v. *Webster*, 174 Mass. 385, 392, that "in making any public grant the State may impose such terms as it sees fit. It may relieve the grantee from the payment of any damages for the taking of public property, or it may require compensation to be made to private persons where no legal right has been interfered with." Here the provision for the recovery of damages is of the same broad character that was before the court in *Sheldon* v. *Boston & Albany Railroad*, 172 Mass. 180, and *Hyde* v. *Fall River*, 189 Mass. 439.

* The case was reported to this court by *Schofield*, J.

But although there was evidence that the present outlet of Cape Pond into Alewife Brook was the original and natural one, there was also evidence that this was merely an artificial channel, dug before the year 1700, though it was not disputed that the waters of Cape Pond have flowed in their present channel through the present outlet for some two hundred years. The respondent asked the judge at the trial to instruct the jury that if they found that the brook connecting Cape Pond with Alewife Brook was not a natural watercourse but an artificial channel, then the petitioner could not maintain his petition. The judge refused the request, and submitted to the jury the question whether the brook would in the course of nature flow at low tide across the flats upon which the petitioner's dam is located, as a watercourse, if there were no dam there. The jury answered this question in the affirmative, and found that the petitioner had sustained damage in his mill property and privilege from the respondent's taking to the amount of $600.

The ruling of the judge that upon these facts the petitioner's rights were analogous to those of a riparian proprietor was sufficiently favorable to the respondent. It was immaterial, under the circumstances proved, whether the outlet from Cape Pond was originally natural or artificial. It had flowed in that course for more than two hundred years, and all persons had acquiesced in that condition. *Stimson* v. *Brookline*, 197 Mass. 568, and cases there cited.

And the petitioner's rights were at least analogous to those of a riparian owner. The water of the brook flowed into the pond created by his dam, and raised its level to a higher point and for a longer time than otherwise would be the case, His use of the water of the brook was similar to that of an ordinary mill owner on a flowing stream. The fact that his dam was below high water mark and that his mill was accordingly operated as a tide mill, affected the manner of his use of the water, rather than his right to use it. In *Moulton* v. *Newburyport Water Co.* 137 Mass. 163, it was assumed that riparian owners on a tidal stream between high and low water mark have a right to the continued existence, flow and use of the stream; and it was so decided in *Lyon* v. *Fishmongers' Co.* 1 App. Cas. 662, reversing the decision of the same case reported in L. R. 10 Ch. 679, which was some-

what relied upon in the dissenting opinion in *Watuppa Reservoir Co.* v. *Fall River*, 147 Mass. 548, 565.

Nor can it be said that the petitioner's damages, as found by the jury, are not the direct and proximate result of the taking, but are too remote or merely sentimental, as in *Fay* v. *Salem & Danvers Aqueduct*, 111 Mass. 27. There is nothing in that decision which bears on the rights of a riparian owner to use the waters of a stream flowing from a great pond. See the comments on that case in *Watuppa Reservoir Co.* v. *Fall River*, 147 Mass. 548, 565. *Cole* v. *Eastham*, 133 Mass. 65, turned upon the right of the Legislature to control absolutely the waters of great ponds; and we need not consider whether the doctrine was carried too far in that case.

The amount of the petitioner's damages was wholly for the jury, and we cannot revise their finding.

The evidence offered upon the question of interest was immaterial; and the judge rightly ruled that interest must be computed, upon the amount of damage, if any, from December 30, 1894, the time when the waters were actually diverted. *Raymond* v. *Commonwealth*, 192 Mass. 486, 489. *Hay* v. *Commonwealth*, 183 Mass. 294. *Pegler* v. *Hyde Park*, 176 Mass. 101. *Cowdrey* v. *Woburn*, 136 Mass. 409. The respondent might itself have brought the case up for trial. *Drury* v. *Midland Railroad*, 127 Mass. 571, 585. The delay in that case was much longer than in the case at bar; and it is not important to determine whether the delay in the present case was at the request of the one party or the other.

*Judgment on the verdict.*

The case was submitted on briefs.

*H. T. Lummus & C. N. Barney,* for the petitioners.

*F. H. Tarr,* for the respondent.