HITTINGER FRUIT COMPANY & another *vs.* CITY OF CAMBRIDGE.

Middlesex.    March 27, 1914. — May 29, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Watercourse. Waterworks. Cambridge. Equity Jurisdiction,* To restrain diversion of watercourse, Alternate relief. *Damages,* For property taken or injured under statutory authority.

Under St. 1892, c. 421, § 1, authorizing the city of Cambridge to "take and hold, by purchase or otherwise . . . any land, rights of way, easements and real estate necessary for constructing, maintaining and protecting a distributing reservoir," that city had no right to acquire underground waters which were the source of a natural stream, or to divert or diminish the waters of such a stream, at least so far as such acquisition was not necessarily incident to the proper construction and use of its distributing reservoir and of the pipes leading into and out of such reservoir. Consequently a fruit grower through whose land a natural brook flowed, the waters of which were diverted by the taking by the city of Cambridge of the land containing the source of the brook for the construction of such reservoir, has no remedy by a petition for the assessment of damages and may maintain a suit in equity against the city for appropriate relief.

In a suit in equity by a fruit grower, through whose land a natural brook flowed, against a city that without authority had diverted the waters of the brook in taking the land that contained the source of the brook for the construction

of a distributing reservoir, a decree is proper which orders the defendant either to cease to interfere with the natural flow of the brook as it was when the defendant began the construction of its reservoir, or else to deliver daily into the brook not less than the number of gallons of water which was the average daily flow of the brook in its natural condition. And it is not a valid objection to this decree, that the natural flow of the brook varied and was uncertain in amount from time to time and that the plaintiff was entitled only to a variable supply of water.

BILL IN EQUITY, filed in the Supreme Judicial Court on October 31, 1911, by the Hittinger Fruit Company, a corporation organized under the laws of this Commonwealth and having its place of business in Belmont, and Richard Hittinger of Belmont, against the city of Cambridge, alleging that the plaintiffs were the owners of about forty acres of land in Belmont where they were engaged in the cultivation of fruit and vegetables, that a brook flowed through their land which was a natural watercourse, and that the defendant had diverted and withdrawn the water from this brook, praying for an injunction and for other and further relief.

The case was referred to Samuel C. Bennett, Esquire, as master. Among other facts the master found that the defendant in taking land for the construction of a distributing reservoir had taken the land containing the source of the brook that flowed through the plaintiffs' land and thus had diverted its waters. On this matter his finding was as follows:

"I find that the waters within the basin-like area [taken for the reservoir] first issued to the surface of the earth and thence flowed in a defined channel within the area of the land taken by the defendant, and finally converged into a single channel at a point some distance within the said taking and within the bounds of the southern half of the present reservoir and in the southeasterly part thereof, and from this point of convergence ran in a defined channel out of the basin-like area at its southeast corner, and thence ran to the eastward as already described. I find, if it is a question of fact, and rule, if it is a question of law, that the said waters thus running constituted a brook or stream.

"I find, if it is a question of fact, and rule, if it is a question of law, that by the time these waters had reached the said southeast corner of the basin-like area and were issuing therefrom, they had taken on the characteristics of a running stream, brook or rivulet."

From the other findings of the master it appeared that this was the stream or brook that flowed through the plaintiffs' land. Other important findings which appeared by the master's report are stated in the opinion.

The case came on to be heard by *Crosby*, J., upon the defendant's exceptions to the master's report and was reserved by the justice upon the pleadings, the master's report and the defendant's exceptions thereto for determination by the full court.

*H. Parker*, (*J. F. Aylward & H. H. Fuller* with him,) for the defendant.

*A. E. Pillsbury & G. M. Palmer*, for the plaintiffs.

SHELDON, J.   The defendant city acquired this land by a taking thereof made under St. 1892, c. 421, § 1.   By that act the defendant was authorized to "take and hold, by purchase or otherwise, . . . any land, rights of way, easements and real estate necessary for constructing, maintaining and protecting a distributing reservoir, and also whatever may be necessary for laying, constructing, maintaining and protecting suitable aqueducts, pipes, water courses and other works to convey water, from Fresh Pond in Cambridge and from Stony Brook in Waltham and Weston, into such distributing reservoir and out of the same into and through said city of Cambridge."   Under this authority the defendant by proper instruments, duly recorded, took the land, describing it particularly "for a distributing reservoir."   It since has taken from the former owners deeds of the land in fee.

Through a part of this land and out of it there ran a natural stream of water through and into the land of the plaintiff corporation (hereinafter called the plaintiff), which was of value to it. The defendant built a distributing reservoir upon the land.   This was so constructed that water leaked from it and ran into the stream, considerably increasing the flow of water therein.   The defendant desired to stop this waste of its water, and for that purpose, and in order also to gather into the reservoir the underground waters of its land, did the acts found and reported by the master, and threatens to continue and carry them out to such an extent as not only to take away the increased flow caused by the leakage from its reservoir (of which the plaintiff could not complain), but greatly to diminish or even to destroy the natural flow

of water in the stream; and this will practically make it useless to the plaintiff and thus cause the plaintiff serious injury. What the defendant did was not necessary for the construction, the maintenance or the use of its reservoir.

The defendant must be held liable for this practical destruction of a natural stream to the injury of a lower proprietor, unless there is some justification for its acts.

The defendant contends that by its taking and the deeds which it has taken from the former owners it has acquired full title to the land, and has the right to intercept the water percolating through the soil of its property, although those waters otherwise would run into the stream, and although the effect of this may be to diminish the flow of the stream so as to render it useless to a lower proprietor, and that upon the findings of the master it has done no more than this.

We need not consider whether an upper riparian proprietor can intercept the underground waters flowing by mere percolation and not in any defined channel into a natural stream, to such an extent as materially to diminish the natural flow of that stream to the injury of the lower proprietors. The decisions as to this have not been wholly in accord. See *Smith* v. *Brooklyn,* 18 App. Div. (N. Y.) 340 and 160 N. Y. 357; *Dickinson* v. *Grand Junction Canal Co.* 7 Exch. 282; *Broadbent* v. *Ramsbothom,* 11 Exch. 602; *Chasemore* v. *Richards,* 7 H. L. Cas. 349. The defendant has not the rights of an ordinary proprietor. It had authority to take the land, only for the construction of a distributing reservoir. It took no water rights whatever. It acquired no right, as against owners upon the stream, to appropriate the underground water, or to diminish the natural flow of the stream or lessen the volume of water therein, at least so far as this was not necessarily incidental to the proper construction and use of its reservoir and the pipes leading into or out of the same. *Hart* v. *Jamaica Pond Aqueduct,* 133 Mass. 488, 489. In *Cowdrey* v. *Woburn,* 136 Mass. 409, 411, the respondent was held liable, not only for water taken from the petitioner's pond by percolation through an embankment, but for water which the respondent had intercepted by wells and thus prevented from flowing into the pond, as otherwise it would have done. The court said: "The town of Woburn does not stand in the same position as an ordinary landowner. All its powers in the

premises are derived from the statute. It has no authority to take or purchase lands for the purpose of appropriating underground currents of water without compensation to persons injured." Other decisions of this court to the same effect are cited and followed in *United States* v. *Alexander,* 148 U. S. 186, 192.

It is not material that the defendant has acquired title to the land by deeds from the former owners thereof. Its power to purchase, like its power to take, comes only from the statute. This also was decided in *Cowdrey* v. *Woburn, ubi supra.* To the same effect see *Hollingsworth & Vose Co.* v. *Foxborough Water Supply District,* 165 Mass. 186; *Ætna Mills* v. *Brookline,* 127 Mass. 69, 72.

The plaintiff's remedy could not have been by a petition for the assessment of the damages occasioned by the defendant's taking and its subsequent acts. As we have seen, the defendant had not taken these water rights. *Attorney General* v. *Jamaica Pond Aqueduct,* 133 Mass. 361. *Lexington Print Works* v. *Canton,* 167 Mass. 341, 344. *Smith* v. *Stoughton,* 185 Mass. 329, 333.

The defendant is not helped by the case of *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365, 373. In that case, land which included two swamps had been taken, among other purposes, "for forming and erecting dams, reservoirs, to take and hold water." The swamps had been dug out, their outlets dammed, and a reservoir constructed, "to take and hold water." It was held that there had been a valid taking of all the water which gathered in the reservoir from springs or by percolation. In the case at bar, nothing was taken but land for "a distributing reservoir," into which was to be brought water from two specified sources, and from which it was to be carried into the defendant city. The distinction is obvious, and there is no need of enlarging upon it.

None of the defendant's exceptions to the master's report can be sustained. We cannot review those which relate to findings of fact, because the evidence is not reported. Those which relate to rulings upon the effect of those facts are not open. *Cook* v. *Scheffreen,* 215 Mass. 444. But the defendant practically has had the benefit of them, in passing upon the questions of law presented to us. So far as these exceptions are material, they are covered by what has been said.

The plaintiff is entitled to equitable relief. The decree presented in the report gives to the defendant the option of ceasing to interfere with the natural flow of the stream as it was when the defendant began the construction of its reservoir, or else of delivering into the stream not less than fifty thousand gallons of potable water daily, that being the average daily flow of the stream in its natural condition. The defendant insists that this gives an unwarranted advantage to the plaintiff; that the flow of the stream was variable and uncertain, and that the plaintiff is entitled only to that variable and uncertain amount, and not to the average amount of the daily flow. But the answer to this contention is obvious. The defendant has taken away what the plaintiff was entitled to have. Justice would require the defendant to undo what it wrongfully has done, and no longer to interrupt, divert or interfere with the natural flow of the waters forming the stream. This would impose much hardship and expense upon the defendant. It would require the removal of some of the defendant's works and the restoration of the natural condition of things, which after the expenditure of a considerable amount of money would leave the defendant under the necessity of either losing much of its own water by leakage from its reservoir or of spending yet more money to stop the leakage which has resulted from the original faulty construction. In order to lessen as far as possible the burden to be put upon the defendant, the suggested decree offers to the defendant an alternative, that of giving to the plaintiff the average daily flow of water. The defendant can do this at but slight inconvenience to itself. No other alternative has been suggested, except to require the defendant to put into the brook each day just the amount of water which would make up the natural flow of the stream on that day. But what the amount would be has not been and very likely could not be determined. Some seasons are drier and some are wetter; the natural volume of the stream would vary not only from day to day, but from year to year. To require the defendant to furnish just that amount of water from day to day would subject it to a very onerous burden; and on the other hand the plaintiff never could know whether on any particular day or days it was receiving just the amount of water to which it was entitled. Both parties went to a hearing upon the master's report without asking for

any more specific findings than had been made, by statement of the amount of flowage on certain days and times and of the average flowage. The defendant did not ask, and has not asked before us, for a determination of the question, just what the future daily flow of the stream, if it had not been interfered with, would have been, and how it would have varied from day to day and from season to season. If that amount could be ascertained, it would be perhaps both more difficult and more expensive for the defendant so to adjust its pipes and meters as to furnish an amount of water varying, sometimes it may be largely varying, from time to time, than to make one adjustment once for all to furnish a fixed amount. But after all, the defendant has the option at its own election of giving to the plaintiff just what it ought to give, by undoing what it wrongfully has done. If the defendant unjustifiably has mingled with its own waters other water of which the plaintiff was entitled to have the beneficial use, the defendant has gained no equitable rights by this; it must at its peril return to the plaintiff as much as it thus has appropriated. *Ryder* v. *Hathaway*, 21 Pick. 298. *Willard* v. *Rice*, 11 Met. 493. *Stearns* v. *Herrick*, 132 Mass. 114. *Levyeau* v. *Clements*, 175 Mass. 376. *Hart* v. *Ten Eyck*, 2 Johns. Ch. 62, 108. *The Idaho*, 93 U. S. 575, 584, *et seq.* *Westinghouse Electric & Manuf. Co.* v. *Wagner Electric & Manuf. Co.* 225 U. S. 604, 618. The defendant cannot complain that it is allowed the choice of an alternative which may be less onerous.

A decree will be entered for the plaintiff in the form annexed to the report, but modified by adding the costs in this court.

*So ordered.*