## Benjamin W. Gleason & another *vs.* Assabet Manufacturing Company.

A mill owner has no right, as against another mill owner further down the stream, to appropriate additional power by lowering or changing the natural bed of the stream, though wholly on his own land.

Tort for injury of the plaintiffs' mill rights. The case was referred to arbitrators, and reserved by *Wells*, J., on their award, for the determination of the full court. The award was as follows:

" We find that the plaintiffs owned in fee simple a mill and mill-privilege on the Assabet River, which had been used long previous to the year 1847 as a mill and mill-privilege, driven by the waters of the said river. We also find that the defendants own in fee simple a mill and mill-privilege lower down on the same river, and driven by the waters thereof, and that the mill of the defendants and the dam that creates the head and fall of water in the river, which drives the mill, was first built in the summer and fall of the year 1847; and that flash-boards from six to twenty-one inches wide were kept thereon, parts of time, until the summer of 1850; all of which was long after the plaintiffs' mill had been built, used and occupied, and we therefore find that the defendants have no right by their dam or flashboards to flow back the water so as to impede or injure the mill of the plaintiffs as it existed in the year 1847, at the time the defendants' grantor built his dam and mill. We also find that the plaintiffs' mill is built on the bank of the river, and within a few rods of the edge thereof; that the water from the wheel of the mill is discharged, and was so discharged before 1847, through an artificial raceway dug from the wheel-pit through the bank of the river; that opposite the point in the river where this artificial raceway discharges into the river, and for some distance above and below the same, there was a natural island in the river; that in very high stages of the water, the water of the river would flow over a part of the island; that the raceway discharged into that portion of the river between the island and

the bank; that, some years before 1847, the plaintiffs' grantors, owning the bank and a part of the island, made a dam or break-water from the bank, above the outlet of the raceway, to the upper part of the island, by which the water of the river was prevented, except in high stages of the water, from running down between the island and the bank on which stood the plaintiffs' mill. The plaintiffs and their grantors owned the whole of the island, except a part thereof at the lower end, and also the bank of the river on which their mill was built, as far down the river as they owned the island. After the dam or breakwater was built, the water of the river, in ordinary stages, did not flow between the island and the bank on which the plaintiffs' mill was erected, and, excepting leaks, the only water flowing there was that discharged from the plaintiffs' raceway and such as might be set back from the river, at the opening between the lower end of the island and the bank. Thus the channel between the island and the bank on which the mill stood was converted into a raceway.

" After the dam of the defendants was built, to wit, in the summer and fall of the year 1850, the plaintiffs removed their breast wheel, which had been in use for a number of years and had become somewhat worn by use and age, and put in a new wheel of a different style and construction.

" We also find that the defendants and their grantors from the time their dam was built, parts of the time down to the summer of the year 1850, and also for a year at least before the commencement of the plaintiffs' action, had kept flash-boards upon their permanent dam, varying in width from six to twenty-one inches, thereby raising the water at times, on their dam, to the height of two feet or more; but that the raising of the water by the flash-boards was the cause of very little, if any, damage to the plaintiffs' mill, and did not materially impede the work-ing of their mill or the operation of their wheel in the usual and ordinary state of the river.

" Upon these facts, the plaintiffs claim that their right to their mill and mill-privilege is legally as set forth in the first paper hereto annexed, and the defendants claim that their rights and

those of the plaintiffs are as set forth in the second paper hereto
annexed; and we submit the question to the judgment of the
court, upon our report and finding, which of said claims is the
true and legal rule as between the plaintiffs and the defendants,
and their rights to their respective mills and mill-privileges.   If
the court shall adjudge and determine that the first paper con-
tains the correct and right rule for determining the rights of the
plaintiffs and the defendants, then we find, award and deter-
mine, and this is our final finding, award and determination,
in that event, that the plaintiffs have suffered damage on ac-
count of the maintenance of the dam and flash-boards by the
defendants as above set forth, to the amount of one dollar;
and that the defendants have the right to keep flash-boards per-
manently upon their present dam across the Assabet River, of
the width of seven inches.   But if the court shall adjudge and
determine that the second paper contains the correct and right .
rule for determining the rights of the plaintiffs and the defend-
ants, then we find, award and determine, and this is our final
finding, award and determination, in that event, that the plain-
tiffs have suffered no appreciable damage from the maintenance
of the dam and flash-boards by the defendants as above set
forth, and that the defendants have the legal right to keep flash-
boards permanently upon their said dam, of the width of twenty-
one inches.

   "And we further award and determine that the costs of this
arbitration, taxed at $1719, shall be paid equally by the par-
ties."

   The first paper referred to was as follows:

   "The plaintiffs claim that the wheel in their mill at the time
the defendants' dam was erected was the measure or index of
their right at that time, and that no owner below on the same
stream had any right to raise the water by a dam, or flash-boards
ɔn a dam, to such height as would cause the water to set back
so as to impede or interfere with the full and perfect operations
of any wheel on a level with the wheel that was in operation at
the time the dam of the defendants was erected, even if, on ac-
count of the construction of the raceway or for any other reason,

the plaintiffs' grantors did not, at the time of the erection of the defendants' dam, use their whole available power. They also claim that they have the right to clear out and deepen their raceway, and that part of the natural bed of the stream that was used as a raceway, and to widen the channel down the stream and remove all obstructions, to the extent of their land, so as to deliver the water in its natural channel at its lower line, provided that by so doing they do not alter the level of the bed of the stream at the point where the water leaves their land."

The second paper referred to was as follows:

" The defendants claim, 1. That they have the right to take up and appropriate to their mill all the power of the river, except to the injury of the plaintiffs' older mill, above theirs; that in determining what the plaintiffs' mill is, you are to give them the full benefit of all the water power they have appropriated to their own use, whether it is in fact used all the time or not; but you are not to include as a part of their mill any capacity of increase by a change or alteration of the natural condition of the stream, its bed or banks, or by deepening the raceway by removing a part of the bed thereof in its natural condition up to this time. That is, in this case, if the plaintiffs' present mill cannot be added to or increased in power except by digging down the raceway which formed a part of the river, or widening it by removing a portion of the natural banks of that part of the stream used as a raceway, or a part of a natural island in it, and the flash-boards of the defendants do not injure in any way the mill of the plaintiffs as now used, and would not injure it, unless the plaintiffs should make the alterations before referred to, in the natural condition of the bed and banks of the raceway and that part of the stream used as a raceway, by lowering the bed of a part of it, or removing a portion of its banks, then the defendants have the right to keep the flash-boards upon their dam, and the plaintiffs have no claim or cause of action against the defendants for keeping them up.

" 2. That if the arbitrators shall decide that the plaintiffs can hold as against the defendants all the water power appropriated by their grantors before 1847, the time when the defendants

built their dam and appropriated to their mill all the power not already appropriated by the plaintiffs' mill, then the defendants have the right to raise the water by flash-boards to any height which will not impede any wheel, of whatever description it may be, on the same level with the wheel in use in 1847, provided the natural bed and banks of the stream are left, at the outlet of the plaintiffs' wheel, as they were in 1847. And if the defendants' flash-boards complained of would not impede any wheel of any description upon the same level with the one of 1847, unless the plaintiffs should dig down and alter the natural bed of the river or the natural bed of the raceway, and remove a part of the natural banks as they then existed, or remove a part of the natural island in the stream, the defendants have the right to keep on the flash-boards, and the plaintiffs cannot rightfully claim their removal."

*H. W. Paine & G. M. Brooks,* for the plaintiffs. The plaintiffs' raceway is a branch of the stream wholly on their own land, and was so, long before the erection of the defendants' dam. They have the lawful right to make such improvements in it as will facilitate the flow of the water from their wheel. And the defendants have acquired no right to prevent such improvements, or to deprive the plaintiffs of the benefits which would result therefrom. The plaintiffs have the same right to improve their raceway that they would have to improve an artificial one. Washburn on Easements, 265, 266. *Bliss* v. *Rice,* 17 Pick. 23 *Norton* v. *Volentine,* 14 Verm. 239. *Ford* v. *Whitlock,* 27 Verm. 265. *Delaney* v. *Boston,* 2 Harrington, 489.

The plaintiffs do not contend that they have the right to lower their wheel and deepen their raceway to the extent of their land, in order to run a wheel at a lower level, but only that they can remove obstructions and make such improvements in their raceway as will give free egress to the water from a wheel on a level with the wheel as it existed in 1847, so that they can make use of all the power to which they were entitled by their appropriation. Washburn on Easements, 263. *Ray* v. *Fletcher,* 12 Cush. 200. *Cowell* v. *Thayer,* 5 Met. 253. *Jackson* v. *Harrington,* 2 Allen, 242.

*J. G. Abbott & G. A. Somerby,* for the defendants.

CHAPMAN, C. J. The principle contended for by the defendants is substantially correct. The plaintiffs were entitled to the full benefit of all the water power which they had first appropriated to their own use; but, as against the defendants, they were not entitled to make an additional appropriation of power by lowering or changing the natural bed of the stream below their mills, the defendants having made a prior appropriation of that power by means of their dam. *Knapp* v. *Douglas Axe Co.* 13 Allen, 1. *Dean* v. *Colt,* 99 Mass. 486.

*Judgment for the defendants on the award.*