WATUPPA RESERVOIR COMPANY *vs.* CITY OF FALL RIVER.
TROY COTTON AND WOOLLEN MANUFACTORY *vs.* SAME.
POCASSET MANUFACTURING COMPANY *vs.* SAME.
FALL RIVER PRINT WORKS *vs.* SAME.
FALL RIVER IRON WORKS *vs.* SAME.
AMERICAN PRINT WORKS *vs.* SAME.

Bristol.   Oct. 25, 1882. — Feb. 28, 1883.   C. ALLEN, COLBURN & HOLMES, JJ., absent.

The St. of 1871, c. 133, authorized a city to take the waters of a great pond for the purpose of supplying its inhabitants with pure water; and provided that the city should be liable to pay all damages that should be sustained by any person in his property by the taking of said .waters, or by the taking of any land or water rights.   Under the authority of this statute, the city passed an order taking a certain quantity per day of the waters of the pond.   *Held*, that an owner of a mill privilege on a river half a mile long, which was the outlet of the pond, could maintain a petition, under the statute, for an assessment of the damages to his privilege by the taking by the city of the waters of the pond.

The St. of 1871, c. 133, authorized a city to take the waters of a great pond for the purpose of supplying its inhabitants with pure water; and provided that the city should be liable to pay all damages that should be sustained by any person in his property by the taking of said waters, or by the taking of any land or water rights. Under the authority of this statute, the city passed an order taking a certain quantity per day of the waters of the pond. A company had been previously incorporated "for the purpose of constructing a reservoir of water in" the pond, "for the benefit of the manufacturing establishments on" a river which was the outlet of the pond; and it had power to build a dam so as to raise the water in the pond to a certain height. Its capital stock had always been owned, and it had been managed, by the mill-owners on the river, each of whom owned the privilege attached to his mill. *Held*, that the corporation could maintain a petition for any damage to its dam or other property caused by the taking by the city of the waters of the pond; and that each mill-owner was the proper party to bring a petition for damages to his privilege by such taking. *Held, also*, that the city was liable for depriving the petitioners of water used for other purposes, as well as for power. *Held, also*, that a corporation, whose lands did not border on the stream, but to whose mill water was conveyed by a canal running through the land of a riparian owner, under a deed giving the right to the flow of water from the stream, had the same rights against the city as the riparian owners.

PETITIONS for the assessment of damages for the taking of water by the respondent. Trial in the Superior Court, before *Colburn*, J., who ruled, as matter of law, upon agreed facts on which the cases were submitted, that each petitioner was entitled to recover a certain sum; and directed verdicts accordingly. The respondent alleged exceptions. The facts appear in the opinion.

*T. M. Stetson & J. F. Jackson*, for the respondent.

*E. R. Hoar*, (*G. Marston & J. M. Morton* with him,) for the petitioners.

MORTON, C. J. The St. of 1871, c. 133, authorized the city of Fall River to take the waters of the North Watuppa Pond, or any part of them, for the purpose of supplying its inhabitants with pure water. Under the authority of this statute, the city in 1873 passed an order taking one and a half million gallons per day of the waters of the pond.

Section 10 of the act provides that "the city of Fall River shall be liable to pay all damages that shall be sustained by any person or persons in their property by the taking respectively of the entire waters of said North Watuppa Pond, or by the taking of any less proportion of said waters, as authorized by the second and third sections of this act, or by the taking of any land, rights of way, water rights or easements."

A natural stream, not navigable, known as Quequechan or Fall River, flows from the pond for the distance of about half a mile into tide waters, having a fall in the whole of about one hundred and thirty feet, divided into a succession of water privileges. These petitions are brought by several corporations owning and using these water privileges.

The respondent contends that the State is the absolute owner of a great pond, and of the land under it; that it may drain or fill it at pleasure; that the riparian owners on a stream which is its outlet have no rights in the waters of the pond; and therefore that these petitioners have sustained no damage.

It is not necessary to discuss the question as to what may be the extreme rights of the State as to draining, filling or otherwise using the waters of a great pond. If there may be contingencies in which it might divert the waters to the injury of persons owning water rights on the outlet without making compensation, it is clear that the Legislature has not claimed or asserted any such right in this case.

The riparian proprietors on Fall River certainly have water rights, as against all the world except the State. The statute does not give to the respondent the unconditional right to take the waters of Watuppa Pond; it gives the right to take them only upon the condition that the city shall pay all damages to any person injured in his property or water rights by the diversion of the water. It is too clear to admit of doubt, that the intention of the statute was to provide for compensation to the riparian owners on Fall River whose water rights as used by them were injured. Such has been the uniform construction of similar statutes authorizing cities or aqueduct corporations to take the waters of great ponds. *Ipswich Mills* v. *County Commissioners*, 108 Mass. 363. *Bailey* v. *Woburn*, 126 Mass. 416. *Plymouth* v. *County Commissioners*, 16 Gray, 341. It may be added, that the statute we are considering, in §§ 4 and 5, recognizes the Watuppa Reservoir Company and the other petitioners as having water rights which are protected by the statute.

The respondent also contends that, if any petitioner has a claim against the city, it is the Watuppa Reservoir Company alone. This company was incorporated in 1826, "for the purpose of constructing a reservoir of water in the Wattuppa Ponds, so called,

in the town of Troy, in the county of Bristol, for the benefit of the manufacturing establishments on Fall River." It had power to build a dam so as to raise the water in the ponds two feet higher than it was before raised, and to hold real estate not exceeding ten thousand dollars in value, and personal estate not exceeding five thousand. St. of 1826, c. 31. It is a corporation capable of suing and being sued, and therefore may maintain its petition for any damages to its dam or other property caused by the act of the respondent in taking the waters of the pond. But its capital stock has always been owned, and the corporation has been managed, by the mill-owners below, and it is clear from its charter and by-laws that it was formed merely for the purpose of creating a convenient agency to own and manage the dam for the benefit of the mills below. It does not own or control the water rights and privileges of the stream. These are owned by the several mill corporations, each owning the privilege attached to its mill; and it is clear, therefore, that each mill-owner is the only proper party to bring a petition for damage done to his privilege.

The parties have agreed that, in the view of their rights which we have taken, each of the petitioners is injured by the act of the city in taking the water, and have also agreed upon the amount of the damages in each case, except in that of the American Print Works. In that case alone is any question raised as to the measure of damages.*

The American Print Works was established in 1835. In 1857 the Fall River Iron Works, which owned the Metacomet Mill, the lowest mill on Fall River, and whose only title to the use of the water was that of a riparian owner, conveyed to the American Print Works the land on which its buildings are situated, and "one eighth of the current flow of the Fall River." A canal was dug from the pond of the Metacomet Mill to the pond of the American Print Works, and since then the American Print Works has used the water thus supplied, at first for power, and lately for bleaching, cleansing and other operations of print works. Although its works are not directly on the

---

* The parties agreed that, if this corporation was legally entitled to use the water for purposes other than for power, the damages were $10,000; otherwise, the damages were $741.60.

stream, we think it has substantially the same rights against the respondent as the other mill-owners. At the time the city took the water, the American Print Works owned and was enjoying a valuable right to use the water of the river, which has been injured by the taking. The respondent contends that it is liable for a diminution of the water considered only as a source of power, and not for any injury to the petitioner by depriving it of water used for bleaching, cleansing or other similar purpose. We cannot adopt this distinction. A riparian owner has the right to use the water of the stream for any legal purpose, provided he does not infringe upon the rights of others, or create a public or private nuisance. The right to use water for other purposes than power is often a very valuable right, especially to a mill, which, like the American Print Works, is the lowest mill on a stream, and therefore not liable by any pollution of the water to injure any one. The provision of the statute that the city shall pay all damages sustained includes damages for injury to the right to use water for other purposes, as well as to the right to use it for power.

Upon the whole case, therefore, we are of opinion that the rulings of the Superior Court were correct.

*Exceptions overruled.*