JOHN C. HOWE & others *vs.* INHABITANTS OF WEYMOUTH.
JOHN E. SANFORD & others *vs.* SAME.

Norfolk.   January 23, 24, 1889. — March 1, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Eminent Domain — Waterworks — Damages — Evidence.*

A town, as authorized by special statute, proceeded to take, and did take, all the waters of a certain pond, with the land under the same, and all the waters in all the streams that flowed into or from the pond, for the purpose of supplying its inhabitants with pure water.  At the trial of a petition by a mill-owner on a stream flowing from the pond for the assessment of damages to his water rights, evidence was admitted to prove the probable future consumption of water by the inhabitants of the town.  *Held,* that the evidence was inadmissible.

TWO PETITIONS to the Superior Court by the owners, and the assignees in insolvency of another owner, of mills and water privileges on a natural stream running from Weymouth Great Pond, for juries to assess the damages sustained by them through the taking of the waters of that pond by the respondent for a water supply, under the St. of 1881, c. 174.  The cases were tried together, before *Barker,* J., and the jury returned a verdict in each, assessing the petitioners' damages.  The petitioners, being dissatisfied with such assessment, alleged exceptions, the material part of which appears in the opinion.

*W. Gaston & E. C. Bumpus,* (*F. E. Snow* with them,) for the petitioners.

*R. M. Morse, Jr. & H. E. Swasey,* (*M. Morton, Jr.* with them,) for the respondent.

W. ALLEN, J.   The record of the taking of water by the town of Weymouth, after reciting the authority given to the town by the statute to take for the purpose set forth in the statute the waters of Weymouth Great Pond, and the waters which flowed into and from the same, and any water rights connected therewith, states that the town duly proceeded to take and hold for the sole use of the town all the waters of the pond, with the land under the same, and all the waters in all the streams that flowed into or from the pond, for the purpose of supplying the town and its inhabitants with pure water, to extinguish fires, gen-

erate steam, and for domestic and other uses. The town had authority to take, and did take, all the waters of the pond. It might have taken a part of the water either by expressly taking a specified quantity, as in *Ætna Mills* v. *Waltham*, 126 Mass. 422; or by taking land and constructing on it works of limited capacity for pumping water, and constructively taking as much of the water as could be drawn from the pond by the works upon the land taken, as in *Bailey* v. *Woburn*, 126 Mass. 416; or in some other way. In the latter case it was in answer to the contention that the statute did not authorize the taking of a part, but only of all the waters of the pond, that the court said that the statute intended that only so much water should be taken as was required for the purposes named in the act.

But in the case at bar the town expressly exercised the right given to it by the Legislature, and took all the waters of the pond for the public use. Evidence that all the water was not needed, and would not be used for the purposes for which it was taken, would be incompetent to show, either that the taking was illegal, or that all the water was not taken. The taking of the water did not consist in the actual diversion of the water, but in the acquisition of the right to divert it. By the taking, the town acquired the right to divert all the water from the petitioners' mills, and the petitioners were deprived of all right to the use of it. The damages occasioned by the taking are estimated as of the time of the taking, and are occasioned by the quantity of water the right to divert which is taken, irrespective of the amount actually diverted. *Ipswich Mills* v. *County Commissioners*, 108 Mass. 363. *Bailey* v. *Woburn*, 126 Mass. 416. *Ætna Mills* v. *Waltham*, 126 Mass. 422. *Cowdrey* v. *Woburn*, 136 Mass. 409. *Smith* v. *Concord*, 143 Mass. 253.

To show the quantity of water which would be actually diverted from the petitioners' mills, the court admitted evidence, offered by the respondent, of the population of Weymouth, and of the ratio of its increase in the past; and of the quantity of water that the town had diverted for its use during the year before the trial, and of the average quantity to each inhabitant used in several cities, and estimates from these data as to what the future consumption of the water would be by the inhabitants of Weymouth. The argument for the competency of the

evidence is, that proof that all the water will not be in fact diverted, and that a part will remain for the mill-owners, is proof of facts which affect the market value of the property, and show the effect of the taking upon that value. If it were competent to prove these facts, it is objected that the evidence offered is too uncertain and indefinite to be admissible; that it cannot be assumed that the ratio of increase of population in Weymouth will be the same in the future that it has been in the past; nor that the right to use the water will not be extended beyond the present territory of Weymouth; nor that the consumption of water for generating steam, and for other uses, will not be indefinitely increased; nor that there may not be occasion to detain water from the petitioners' mills which may not be required for actual consumption.

Without deciding that these considerations alone would show the evidence to be inadmissible, the vital objection to it is, that the facts which it was offered to prove tend only to show the probability that the town will not exercise in full the right it has taken. The taking is for the purpose of fixing the rights of the parties, including the right of the mill-owner to damages. If the taking had been of so much of the water of the pond as should from time to time be actually used by the inhabitants of the town, it would have been too indefinite. It would be more objectionable if, upon a definite taking of all or of a part of the water, the respondent could show, in reduction of damages, that it is probable that it will use a part only of what it took. However much the belief in the probability that a right taken by eminent domain will not be exercised may affect the market value of related property, the party taking cannot prove the probability that he will not exercise his right as an element in the market value of the property, or in mitigation of damages occasioned to it by the taking. *Brown* v. *Worcester*, 13 Gray, 31. *Old Colony Railroad* v. *Miller*, 125 Mass. 1.

If a parcel of land should be cut off by a railroad, the fact that the railroad company had prepared a crossing over its road for access to such parcel, and intended to maintain it, or the probability that a highway would be laid out over the railroad which would give access to the land, might affect the market value of the land cut off, but could not be put in evidence by

the railroad company in mitigation of damages. The respondent has the right and the power to divert all the water from the petitioners' mills. It has taken from the petitioners all their rights, and it cannot prove a probability that it will not exercise its legal rights, but will permit the petitioners to use part of the property taken in mitigation of the damages for the taking.

Some other exceptions were taken by the petitioners to the admission or exclusion of evidence, which we have considered, but do not think it necessary to discuss in detail. We do not find any error except in the admission of evidence to prove the probable future consumption of water by the inhabitants of Weymouth. *Exceptions sustained.*