PROPRIETORS OF MILLS ON MONATIQUOT RIVER *vs.* INHABITANTS OF RANDOLPH, HOLBROOK, AND BRAINTREE.

SUMNER HOLLINGSWORTH & another *vs.* SAME.

OLIVER AMES AND SONS CORPORATION *vs.* SAME.

JAMES T. STEVENS & another *vs.* SAME.

ALVA S. MORRISON & others *vs.* SAME.

LYDIA O. MORRISON & another *vs.* SAME.

JENKINS MANUFACTURING COMPANY *vs.* SAME.

BETSEY B. HOBART *vs.* SAME.

Norfolk.   March 11, 1892. — October 27, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Eminent Domain — Waterworks — Statute — Damages — Evidence.*

The title of a statute is, in a legal sense, a part of the statute.

The St. of 1818, c. 35, was entitled " An act to incorporate the proprietors of mills on M. River, in B.," the purpose of which was to make reserves of water in the ponds named in the statute by erecting dams " to raise the water in said

ponds as high as its original bounds, to lower the outlets of said ponds, and to draw off such portions of said waters from any of said ponds, in such quantities and at such times as they, or a major part of them, or their special agent for that purpose, shall judge best for the interest of all concerned." . The corporation and others brought petitions, under the St. of 1885, c. 217, § 4, for the assessment of damages resulting from the joint taking by the towns of A., B., and C., under the authority of that statute, of all the water of G. Pond, lying partly in the town of A. and partly in the town of C. It appeared at the trial, that the corporation owned a dam which held up and regulated the waters of G. Pond, and certain land and flowage rights used in connection therewith, at or near the border of the pond, which dam and land and flowage rights were taken by the respondents under the St. of 1885; that the corporation itself owned no mill and carried on no industry, and never issued any stock; that the other petitioners were owners of several mill sites below, on the M. River, which is the outlet of G. Pond to the sea; that all the petitioners, owners of mill sites on the stream below, with the exception of one, were members of the petitioner corporation; and that the corporation, for at least sixty years previously, had always drawn and let down the stored water for the best convenience of the mill-owners members thereof on the stream below. The respondents asked the judge to rule that, if any of the petitioners could recover against the respondents, it was the petitioner corporation alone; and that, if the petitioners, the mill-owners below, could recover for the loss of any of the water of the pond, it could only be for the overflow in excess of the storage capacity, as fixed by the St. of 1818, and by the dam erected by virtue of that statute. The judge refused so to rule, and instructed the jury upon the rights of the petitioner corporation and of the mill-owners on the stream to recover damages in accordance with the rule laid down in *Watuppa Reservoir* v. *Fall River*, 134 Mass. 267. *Held*, that the respondents had no ground of exception.

The St. of 1885, c. 217, authorized three towns named to take, singly or jointly, for the use of their inhabitants, the waters of a certain pond in two of the towns, and the waters which flowed into or from the same, together with any water rights connected therewith, and also all lands, rights of way, and easements necessary for holding and preserving such water; and, in § 4, provided that "the said towns, or such of them as act jointly, shall jointly pay all damages sustained by any person or corporation in property by the joint taking of any land, right of way, water, water source, water right or easement, or by any other thing done by said towns, or such of them as act jointly, under the authority of this act." Petitions were brought, under § 4, by a corporation which owned a dam that held up and regulated the waters of the pond, and certain land and flowage rights used in connection therewith, and by owners of several mill sites below on a river which was the outlet of the pond to the sea, for the assessment of damages resulting from the joint taking by the three towns of all the water of the pond. *Held*, that the judge rightly ruled that the corporation was entitled to recover the market value of its dam, land, and flowage rights which were taken, as property distinct from the right to use the water of the river, and that the mill-owners could recover for the injury to their estates in being deprived of the use of a part of the water of the stream by the taking by the respondents.

At the trial of petitions by mill-owners on a river which was the outlet of a pond, for the assessment of damages resulting from the joint taking by certain towns, under the authority of a statute, of all the water of the pond, the respondents offered to prove that a certain amount of the waters used by them

in the exercise of the powers given them by the statute would necessarily be returned by percolation, after use, to the water-shed of the river below the pond, and become available to the mills for mill purposes, and that the amount so returned could be ascertained with reasonable accuracy, and offered to show what that amount would be. *Held,* that the evidence offered was rightly excluded. ALLEN, KNOWLTON, and BARKER, JJ. dissenting.

Certain towns, under the authority of a statute, took jointly, for the use of their inhabitants, the water of a great pond. A corporation which owned a dam, which was also taken, that held up and regulated the waters of the pond, and several mill-owners below on M. River, which was the outlet of the pond, all of whom except one S. were members of the corporation, brought petitions for the assessment of damages resulting from the taking of the water of the pond. At the trial, it appeared that S. was the riparian owner of a mill site on a branch of M. River called B. River, which, with another branch called F. River, formed a small island in M. River, just below the dam of A., who was one of the petitioners; that A.'s dam extended across M. River at the fork where the two branches separated; that the wasteway of A.'s dam emptied into B. River, and the raceway into F. River, and the two branches came together below the privilege of S.; that S. had a mill-pond and mill on B. River, below the wasteway of A.'s dam, and actually used the water that flowed over the wasteway of this dam into B. River, but he used none of the water used by the A. privilege, as that emptied into F. River; that S. built his dam and mill in 1872, and A.'s mill and dam were erected prior to 1830; that whatever water A. customarily used, and was using at about the time of the taking, was not in excess of what he had been using without interruption for at least twenty years prior to the taking, and was at least as much as naturally flowed through F. River; and that S. owned no land on F. River, but that A. claimed title to land on both sides of F. River. The respondents asked the judge to rule that, upon the facts, S. "only received the water he did receive by the sufferance of A., and was not entitled to recover in this action." The judge refused so to rule, and instructed the jury, in substance, as follows: "The A. dam, having been constructed upon this stream and equipped to use a certain amount of the water there, had the prior title, prior ownership, to the water thus appropriated. And as to that the mill-owner subsequently locating below, to wit, S., would have no claim. But as to the water of the stream not thus appropriated by A., S. became the prior occupant and has prior ownership, and A. could not afterwards raise his dam to the prejudice of S. as to what remained of that power. Now, in determining the value of the water privilege to S., you are to assume that the right of A. is limited to the dam as he has erected it, to the appropriation of the water as he has made it, and that S. is entitled to whatever remains, to have it come to his mill unobstructed." *Held,* that the respondents had no ground of exception.

FIELD, C. J.    These were petitions under the St. of 1885, c. 217, § 4, for the assessment of damages resulting from the joint taking by the respondents of all the water of Great Pond, lying partly in the town of Braintree and partly in the town of Randolph. The petitions were tried together before the same jury. It appears that, at the trial, two of the respondents asked the court to rule " that the petitioners, in the aggregate, were enti-

tled to but two peremptory challenges, and the respondents in the aggregate to but two. The court refused so to rule, but ruled that each side was entitled to sixteen peremptory challenges; that is, to two for each of the eight petitioners." The exception taken to this ruling was waived at the argument in this court. See *Mutual Life Ins. Co.* v. *Hillmon*, 145 U. S. 285.

The respondents asked the court to rule " that, if any of these petitioners could recover against the respondents, it was the petitioner corporation, the Proprietors of Mills on Monatiquot River, and it alone "; and they further asked the court to rule " that if the petitioners, the mill-owners below, could recover for the loss of any of the water of the pond, it could only be for the overflow in excess of the storage capacity, as fixed by the act of 1818, and by the dam erected by virtue of that act." Both these rulings the court refused to give, and it instructed the jury upon the rights of the petitioning corporation and of the mill-owners on the stream to recover damages in accordance with the rule laid down in *Watuppa Reservoir* v. *Fall River*, 134 Mass. 267.

The act of 1818 referred to is the St. of 1818, c. 35, entitled, " An act to incorporate the Proprietors of Mills on Monatiquot River, in Braintree." The exceptions recite that this corporation " owned a dam which held up and regulated the waters of Great Pond, and certain land and flowage rights used in connection therewith, at or near the border of said pond, which dam and land and flowage rights, acquired by and belonging to the said corporation, were taken by the respondents under said act of 1885, but this corporation itself owned no mill, and carried on no industry, and had never issued any stock. The other petitioners were owners of several mill sites below, on the Monatiquot River, which is the outlet of said Great Pond to the sea. The cases were first heard by a board of three auditors, who found, among other things not material to this bill, that all the petitioners owners of mill sites on the stream below, with the exception of James T. Stevens and another, were members of the petitioner corporation, . . . and that the said corporation, for at least sixty years last passed, had always drawn and let down the stored water for the best convenience of the mill-owners members thereof on the stream below."

The respondents contend that the St. of 1818, c. 35, is materially different from the St. of 1826, c. 31, under which the Watuppa Reservoir Company was incorporated, and that therefore the decision in *Watuppa Reservoir* v. *Fall River, ubi supra,* is not applicable. These differences are said to be as follows. The Watuppa Reservoir Company was formed, as the act declares, " for the benefit of the manufacturing establishments on Fall River," but there is no similar provision in the St. of 1818, c. 35. The Watuppa Company by said act was authorized to " make reserves of water in the Watuppa ponds, . . . and to draw off said reserved water in such quantities, at such times, and in such manner as they shall judge to be most for the interest of all concerned." The provisions of the St. of 1818, c. 35, on this subject are quoted hereafter. The Watuppa Company was authorized to issue stock by § 4, and it was found in that case as a fact that it had issued stock, and that the stock had always been owned by the mill-owners in Fall River. The Proprietors of Mills on Monatiquot River were not authorized to issue stock, and have never issued any, and it does not appear that any arrangement resembling the issue of stock has ever been made by this corporation. Again, it is said that the act under which the city of Fall River took a part of the waters of the North Watuppa Pond, (St. 1871, c. 133, §§ 4 and 5,) recognized the Watuppa Reservoir Company and the others petitioners in that case as having water rights which were protected by that statute, while the statute of 1885, c. 217, under which the respondents in the present case acted, contains no similar provisions, and it is argued that the ground of the decision in the Watuppa Reservoir Company case is that the court found that it was " clear from its charter and by-laws that it was formed merely for the purpose of creating a convenient agency to own and manage the dam for the benefit of the mills below," and that the court cannot find this to be true of the corporation of the Proprietors of Mills on Monatiquot River.

We are, however, of opinion that the differences suggested are not sufficient to take the present cases out of the rule of damages laid down in *Watuppa Reservoir* v. *Fall River.* See *Proprietors of Mills on Monatiquot River* v. *Braintree Water Supply Co.* 149 Mass. 478. The St. of 1818, c. 35, is not

so explicit in regard to the purpose for which the corporation was created as the St. of 1826, c. 31, but we think there can be no reasonable doubt of its meaning. Its title is, "An act to incorporate the Proprietors of Mills on Monatiquot River, in Braintree." It has been sometimes said that the title is not a part of an act, and this was formerly, if not now, true of the Acts of the British Parliament. Barrington on Statutes, 449. *Attorney General* v. *Weymouth,* 1 Ambl. 20. But in the Legislatures of the States of the United States, and in the Congress of the United States, the title is in a legal sense a part of every act passed. The practice in this country is that a bill is introduced and reported with a title, and the title is read with the other parts of the bill, and is amended or stricken out in the same manner as any other part of the bill. In the Constitutions of some of the States it is provided that certain bills shall embrace only one subject, which shall be expressed in the title. In this Commonwealth there are no constitutional provisions concerning the titles of acts passed by the General Court, and the titles are usually short, and often are of little use in determining the meaning of statutes. Cases, however, may occur in which the title becomes important as a declaration by the Legislature of the object of the act. *Simpson* v. *Story,* 145 Mass. 497. *Hadden* v. *Collector,* 5 Wall. 107. The title to the act we are considering, we think, is significant upon the question whether it was intended to establish a corporation for diverting the waters of Great Pond from the stream which was the natural outlet, or for reserving them for the benefit of mills on that stream. It is not recited in the exceptions that the corporators named in the act were, at the time of its passage, proprietors of mills on the Monatiquot River, but from the exceptions it is to be inferred that, during sixty years at least before the trial of these petitions, certain mill-owners on that river had been members of this corporation. In the body of the act it appears that its purpose is to make reserves of waters in the ponds named in the act, by erecting dams " to raise the water in said ponds as high as its original bounds, to lower the outlets of said ponds, and to draw off such portions of said waters from any of said ponds, in such quantities and at such times as they, or a major part of them, or their special agent for that purpose, shall judge best for

the interest of all concerned." This shows that the purpose was to make reserves of water for the purpose of discharging it through the outlets of the ponds, " for the interest of all concerned," and, taken in connection with the title, makes it reasonably clear that certain proprietors of mills on Monatiquot River were intended as some, if not all, of the persons concerned in the use of the water intended to be reserved in Great Pond. The practical construction put upon the act for at least sixty years, as appears by the exceptions, confirms this view of the statute.

The St. of 1885, c. 217, § 4, provides : " The said towns, or such of them as act jointly, shall jointly pay all damages sustained by any person or corporation, in property, by the joint taking of any land, right of way, water, water source, water right or easement, or by any other thing done by said towns, or such of them as act jointly, under the authority of this act." This provision is ample, and we think the court rightly ruled that the corporation of the Proprietors of Mills on Monatiquot River was entitled to recover the market value of its dam, land, and flowage rights which were taken, as property distinct from the right to use the water of the river, which belonged to the mill-owners on the stream, and that the mill-owners could also recover for the injury to their estates in being deprived of the use of a part of the water of the stream by the taking of the respondents.

The respondents also asked the court to rule " that none of the petitioners, the mill-owners below, were members of the corporation chartered by said act [St. 1818, c. 35], and that they could not recover for damages occasioned by the taking of the waters of the pond." The exception to the refusal to give this ruling was waived at the argument. The auditors had found as a fact that the mill-owners, with the exception of James T. Stevens and another, were in fact members of this corporation, and the question whether they could recover damages or not was included in the previous requests.

The exceptions recite that " the respondents offered to prove that a certain amount of the waters used by the respondents in the exercise of the powers given them by chapter 217 of the acts of the year 1885, would necessarily be returned by perco-lation, after use, to the water-shed of the river below said Great

Pond, and become available to the mills for mill purposes, and that the amount so necessarily returned could be ascertained with reasonable accuracy, and offered to show what said amount would be. The court refused to admit this evidence, and the respondents alleged an exception."

The respondents cite *Mannville Co.* v. *Worcester*, 138 Mass. 89. In that case, as appears more fully from the original papers, "by means of a sewer system which emptied into Mill Brook, another natural stream which also emptied into Blackstone River within the limits of said city, a portion of said water," that is, of the water withdrawn, "was returned to said river. . . . The defendant claimed that the percentage of the water pumped, which returned to the river through said system of sewers, should be deducted from the amount pumped in arriving at the amount of water for the diversion of which the city was responsible, and introduced some evidence, against the plaintiff's objection, tending to show what this percentage was." That was an action of tort, in which the plaintiff was entitled to recover damages for the diversion of the water up to the date of the writ. The water diverted was used by the inhabitants of the city of Worcester, and a part of it was, after being used, emptied through the sewers back into the stream, a long distance above the mill of the plaintiff. The amount of water actually diverted from the plaintiff's mill for six years before the date of the writ, and the legal damages suffered therefrom, were the questions before the court, and it did not appear that there was any difficulty in ascertaining this amount of water, and this court held that, "so far as the water was returned, its withdrawal was no wrong to the plaintiff."

In the present cases the respondents took all the water of Great Pond, and the damages to be assessed are not the actual damages suffered by the petitioners up to the date of filing the petitions, but all the damages that will arise in the future, as well as those that have arisen in the past. Notwithstanding the terms in which the offer of the respondents was made, and if we assume that the amount returned to Monatiquot River in the past could be reasonably ascertained, yet the amount that would be returned in the future is necessarily dependent upon many things which cannot now be accurately predicted. Systems of sewers may

hereafter be constructed which will carry most or all of the water used into other streams, or into the Monatiquot River below any of the mills of the petitioners. The respondents have the right to divert all the water of Great Pond from Monatiquot River, and it is in the nature of things not impossible that they may, at some time in the future, exercise this right to its full extent.

In *Howe* v. *Weymouth*, 148 Mass. 605, the town of Weymouth took all the water of Weymouth Great Pond, and evidence was admitted in the Superior Court of estimates of the quantity of water which in the future would be diverted, based upon the actual population of Weymouth, the ratio of the increase of population in the past, the quantity of water which had in fact been used during the year before the trial, and the average quantity used by each defendant in several cities where a record had been kept. This court held that the evidence was improperly admitted, because it tended to show only a probability that the town would " not exercise in full the right it has taken." The court was of opinion that the only safe rule was to estimate the damages according to the right taken. In that case, as in these cases, it was argued that the improbability that the town would in fact deprive the mill-owners of all the water taken was a fact, the commercial value of which should be estimated by the jury as it would be by vendors and purchasers, but that view did not prevail with the court. In the opinion of a majority of the court, the considerations which governed the court in that case apply to the present cases. The offer, indeed, says that the " amount so necessarily returned could be ascertained with reasonable accuracy," but if it be so, it must be ascertained by estimates similar to those made in *Howe* v. *Weymouth*. The statement probably is not true, except by assuming that certain conditions will exist in the future which may or may not exist. As but one estimate of damages for all time must be made, and as it is plainly not impossible that at some time in the future the towns may use all the water they have taken, and return no part of it to the Monatiquot River above the mill sites of the petitioners, a majority of the court are of opinion that the court below rightly refused to admit the evidence offered.

The remaining exception relates only to the petition of Stevens

and Willis. They were not members of the corporation of the Proprietors of Mills on the Monatiquot River, but they were riparian owners of a mill site on a branch of the Monatiquot River called Back River, which, with another branch called Fore River, formed a small island in Monatiquot River, just below the dam of the Ames Corporation. The Ames dam extended across the Monatiquot River at the fork where the two branches separated; the wasteway of the Ames dam emptied into Back River, and the raceway into Fore River, and the two branches came together below the privilege of Stevens and Willis. Stevens and Willis had a mill-pond and mill on Back River, below the wasteway of the Ames dam, and actually used the water that flowed over the wasteway of this dam into Back River, but they used none of the water used by the Ames privilege, because this emptied into Fore River, which joined Back River below the Stevens and Willis privilege. The fact that Stevens and Willis were not members of the corporation of the Proprietors of Mills on Monatiquot River does not of itself prevent them from maintaining their petition, if they had a right to use any of the water of Monatiquot River through which the water of Great Pond discharged itself. In *Watuppa Reservoir* v. *Fall River*, 134 Mass. 267, 270, the American Print Works was not a member of the Watuppa Reservoir Company. The exceptions recite that Stevens and Willis built their dam and mill in 1872, that the Ames dam and mill were erected prior to 1830, and that " whatever water the Ames Corporation customarily used, and was using at about the time of the taking, was not in excess of what it had been using without interruption for at least twenty years prior to the taking, and was at least as much as naturally flowed through the Fore River." We understand that Stevens and Willis owned no land on Fore River, but that the Ames Corporation claimed title to land on both sides of Fore River. The respondents requested the court to rule that, on the facts recited in the exceptions, Stevens and Willis " only received the water they did receive by sufferance of the Ames Corporation, and were not entitled to recover in this action." The court refused so to rule, and instructed the jury generally according to the decision in *Cary* v. *Daniels*, 8 Met. 466. See *Pratt* v. *Lamson*, 2 Allen, 275. Applying the principles of this decision to the exact case before

it, the court said : " The Ames dam, having been constructed upon this stream, and equipped to use a certain amount of the water there, had the prior title, prior ownership, to the water thus appropriated.  And as to that the mill-owners subsequently locating below, to wit, Stevens and Willis, would have no claim. But as to the water of the stream not thus appropriated by the Ames Company, Stevens and Willis become the prior occupants, and have prior ownership, and the Ames Company could not afterwards raise its dam, to the prejudice of Stevens and Willis as to what remained of that power.  Now, in determining the value of the water privilege to Stevens and Willis, you are to assume that the right of the Ames Company is limited to the dam as they have erected it, to the appropriation of the water as they have made it, and that Stevens and Willis are entitled to whatever remains, — to have it come to their mill unobstructed."  Disregarding the right acquired by the Ames Corporation by prior occupation or prescription, Stevens and Willis were entitled to the reasonable use of the water which naturally flowed through Back River, and were not entitled to the use of the water which naturally flowed through the Fore River, and the Ames Corporation was entitled to the reasonable use of the water of the whole stream above its dam.  See *Trustees of Hopkins Academy* v. *Dickinson*, 9 Cush. 544, 548.  As it was found as a fact that the amount of water which the Ames Corporation customarily used " was at least as much as naturally flowed through the Fore River," it is plain that under the instructions of the court Stevens and Willis were allowed no damages on account of being deprived of any water which would naturally flow through Fore River.  Of the water which would naturally flow through Back River they were under the instruction of the court held entitled to only so much as had not been previously appropriated by the Ames Corporation by the erection of its dam and mills, and by the customary use made of the water in operating its mills uninterruptedly for a period of more than twenty years prior to the taking of the respondents.  If the instructions of the court on this part of the case were not correct, they were at least sufficiently favorable to the respondents, for on the facts stated the jury could not have found that Stevens and Willis were entitled to any more water than naturally flowed through Back River,

and may have found that they were entitled to less. But we are of the opinion that .the instructions were correct. We think that it must be 'taken, on the facts stated in the exceptions, that the use of the water by the Ames Corporation, if it deprives Stevens and Willis of any water to the use of which they were originally entitled, was adverse to Stevens and Willis, and was under a claim of right, and that it had continued uninterruptedly for more than twenty years prior to the taking, during all of which time Stevens and Willis had maintained their dam and mill subject to this use of the water by the Ames Corporation. If this use of the water was in effect a diversion of some of the water which would naturally flow through Back River into Fore River, it must, on the fact stated, be taken that the right to do this as against Stevens and Willis had been acquired by the Ames Corporation by prescription. But the right to divert any part of the water which would naturally flow through Back River into Fore River is limited to the actual use made during the period of prescription. To all the rest of the water flowing into Back River Stevens and Willis had the same rights as the proprietor of a dam and mill on a single stream has against the proprietor of a more ancient dam and mill above him on the same stream. *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 241. *Cowell* v. *Thayer*, 5 Met. 253. *Whitney* v. *Eames*, 11 Met. 517. *Ray* v. *Fletcher*, 12 Cush. 200. *Gleason* v. *Assabet Manuf. Co.* 101 Mass. 72. See *Burnham* v. *Kempton*, 44 N. H. 78, 90; *Bucklin* v. *Truell*, 54 N. H. 122; *Griffin* v. *Bartlett*, 55 N. H. 119.

We see no error in the exceptions, and the entry must be,

*Exceptions overruled.*

ALLEN, J. Upon one point, I am unable to agree with the opinion of the majority of the court. The respondents offered to prove that a certain amount of the waters used by them, in the exercise of the powers given them by St. 1885, c. 217, would necessarily be returned by percolation, after use, to the water-shed of the river below said Great Pond, and become available to the mills for mill purposes, and that the amount so necessarily returned could be ascertained with reasonable accuracy, and offered to show what said amount would be. It seems

to me that this evidence ought to have been received, and submitted to the jury; otherwise the plaintiffs will obtain payment for a supposed loss of water which they actually will use. At best, the estimate of damages in cases like these is but approximate, and it seems to me to be a better approach to exact justice to let the jury pass upon the question of the actual injury to the plaintiffs, in view of such facts as those offered to be proved by the respondents. The only authority of the towns under the statute is to " supply themselves and their respective inhabitants with water for the extinguishment of fires, and for domestic and other purposes." St. 1885, c. 217, § 1. They may take water only " for the purposes aforesaid." § 2. It is certainly conceivable that after making all such uses of these waters as, under a fair construction of the statute, the towns would be authorized to make, some appreciable and material portion of the waters would necessarily return to the stream. Water is not always or necessarily consumed in the using, and the nature of the use and the situation of the land in cases like these may be such that, although the powers given by the statute are fully exercised, yet the plaintiffs will nevertheless get the benefit of the use of a part of the water which has been taken and lawfully used by the towns. The plaintiffs are only entitled to recover compensation for the injuries which they suffer. The question is, How much less is their property worth by reason of the exercise of the public right under the statute?

The present cases are distinguishable from the decision in *Howe* v. *Weymouth*, 148 Mass. 605. In that case it was determined that a town which had elected to take, and had duly filed of record a statement that it had taken, all the waters of a pond, under a statute authorizing it to do so, could not be allowed to show in reduction of damages that it probably would not need nor use all of the water; in other words, that it probably would not exercise in full the rights which it had taken. In the present cases, the defendants offer to show what actual damages the plaintiffs will suffer, on the assumption that the defendants exercise their rights in full. It seems to me that the doctrine of *Howe* v. *Weymouth* ought not to be extended so as to be held applicable to cases like the present, and that the rule established in *Mannville Co.* v. *Worcester*, 138 Mass. 89, would do better justice between the parties.

Mr. Justice KNOWLTON and Mr. Justice BARKER concur in this dissenting opinion.

*R. M. Morse & Asa P. French,* for the respondents.

*E. C. Bumpus & R. Foster,* for the petitioners.