CITY OF NEWTON *vs.* OLIVER H. PERRY & another.

Norfolk.   December 4, 5, 1894. — March 6, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Taking by City of Land for Protection of Water Supply — Right to Exclusive
Possession of Surface.*

When land is taken by a city under statutory authority for the protection of
its water supply, such taking carries the right to exclusive possession of the
surface.

BILL IN EQUITY, filed April 18, 1894, for the protection of
the plaintiff's water supply. Hearing before *Allen,* J., who
reported the case for the consideration of the full court, in
substance as follows.

The premises in question are situated in Needham, on the
bank of the Charles River, and were taken by the plaintiff on
or about December 17, 1889, under and by virtue of the power
given to it by Sts. 1872, c. 344; 1873, c. 326; 1876, c. 54; and
1889, c. 302. The rights in the premises were duly taken by
the plaintiff under said statutes, except that the extent of the
title gained by the plaintiff is questioned by the defendants.
The defendant Perry, being the owner of the premises, took
proceedings for recovering damages for the taking, and such
damages were awarded for the value of the land and buildings
thereon, and the amount thereof paid.  It appeared that the
defendants were keeping upon the premises several hundred
pigs, besides other animals, and there was evidence as to the
condition of the piggery and the danger arising therefrom.

It was agreed that the plaintiff had only voted to take
1,500,000 gallons of water a day, and that the end of the con-
duit already built at the time of the trial (May 11, 1894,) was
2,600 feet from the piggery. The plaintiff was preparing, how-
ever, to lay an extension of the conduit through the land of
Perry. An order appropriating money for such extension was
passed May 9, 1894, and pipe had been bought and work begun
in anticipation of the passing of such order, with the intention
of extending the conduit through said premises.

The plaintiff had requested and notified the defendants to

remove the sources of pollution to the water caused by the keep-
ing of swine and other animals, and to do no act which would
render the water supply impure; but the defendants refused to
comply with such request, and continued to commit the acts
complained of.

A witness for the plaintiff testified that the plaintiff was ob-
taining its water by means of an underground conduit, which
collected the water by percolation from the soil above, below,
and on the sides thereof; and that the conduit already built
was from six to ten feet below the level of the river.

It also appeared that in 1893 the average use of water by
the plaintiff from the conduit was 1,369,000 gallons a day';
and that in some months, including water stored in the reser-
voir, over 1,500,000 gallons were used. There was no evidence
that the amount taken from Charles River had ever exceeded
1,500,000 gallons a day. It appeared that, from the present con-
duit, the plaintiff could get 1,500,000 gallons a day by pumping
twenty-four hours with the present pumping appliances.

The defendants contended that the present water supply of
the plaintiff was not injured by the defendants' occupation of
the premises; that under St. 1889, c. 302, the plaintiff could
take only such an amount of water as it had voted to take, and
it had only voted to take 1,500,000 gallons a day; that all the
plaintiff could take from the defendant Perry was an easement
in the land, and it was for the loss by this easement that his
petition for damages was brought; that the defendants were
entitled to make any use of the land not inconsistent with
the plaintiff's requirements; that no conduit had been built
on the premises, and none could be until some further action
by the plaintiff; and that the conduit, when built, would be
higher than the place where the piggery was.

A decree was entered, perpetually enjoining the defendants
from using and occupying the premises in question, from de-
positing polluting matters thereon, from polluting the plaintiff's
water supply, and from permitting swine and other animals
to remain upon the premises; and ordering the defendants to
remove their swine and other animals and all polluting matters
from the premises; and that the plaintiff have possession of the
premises. From which decree the defendants appealed to the
full court.

*E. P. Carver & E. E. Blodgett,* for the defendants.
*W. S. Slocum,* for the plaintiff.

HOLMES, J.   There are no sacramental words which must be used in a statutory power to take and hold lands in order to give a right to take the lands in fee.   Any language in the statute which makes its meaning clear is sufficient, and a very little more than "take and hold" has been held enough. *Dingley* v. *Boston,* 100 Mass. 544.   *Page* v. *O'Toole,* 144 Mass. 303.   In . *Titus* v. *Boston,* 161 Mass. 209, "take in fee" was thought to mean take the lands, and not merely an easement.   We assume, in deference to the decisions, that the power to take and hold given by the statutes in this case only authorized the taking of an easement.   *Harback* v. *Boston,* 10 Cush. 295.   *Attorney General* v. *Jamaica Pond Aqueduct,* 133 Mass. 361, 365.   *Conklin* v. *Old Colony Railroad,* 154 Mass. 155.   But it is plain from these, as from all the cases, that the purpose of the taking must fix the extent of the right.   The right, whether it be called easement or by any other name, is statutory, and must be construed to be large enough to accomplish all that it is taken to do.

One of the purposes for which the defendants' land was taken was for the protection of the plaintiff's water supply.   St. 1889, c. 302, § 3.   It is too late for the defendants to deny that it was necessary to take the land for that purpose.   It has been taken, and they have been paid for it.   Whatever rights over the land could be needed for the protection of the water under any circumstances the plaintiff has got; and whatever rights it has, it may exercise at once.   It would be an unjust refinement to say that the right is only to do such things from time to time as a court or jury may think necessary then.   The whole right is paid for without regard to the probability of its being exercised. *Howe* v. *Weymouth,* 148 Mass. 605.   *Proprietors of Mills* v. *Randolph,* 157 Mass. 345, 353.   We are of opinion that, when land is taken for the protection of a water supply, exclusive possession of the surface is or may be necessary in order to get the protection needed, and therefore that the right to such possession is one of the rights taken.   See *Brainard* v. *Clapp,* 10 Cush. 6 ; *Cassidy* v. *Old Colony Railroad,* 141 Mass. 174, 177.

*Decree affirmed.*