WESTERN UNION TELEGRAPH CO. v. POLHEMUS et al.

(Circuit Court of Appeals, Third Circuit. May 5, 1910.)

No. 1,243.

1. EMINENT DOMAIN (§ 318*)—TELEGRAPHS AND TELEPHONES (§ 13*)—RIGHT OF WAY—EXTENT OF RIGHT TO USE OF EASEMENT.

A telegraph company, which has acquired a right of way for its line, whether by condemnation or by grant without limitation, is entitled to make any use of the easement in the future which may be incidentally necessary or convenient for the principal purpose for which it was acquired.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 841–846; Dec. Dig. § 318;* Telegraphs and Telephones, Dec. Dig. § 13.*]

2. TELEGRAPHS AND TELEPHONES (§ 10*)—USE OF HIGHWAY—NATURE OF EASEMENT—RIGHTS OF ADJOINING OWNERS.

Where complainant and its predecessor for 60 years maintained on a public highway in New Jersey their telegraph line, constructed under authority of a legislative act passed in 1845 (P. L. 1845, p. 119). it must be presumed that the easement to do so, with respect to abutting lands, was acquired from the then owners, and either fully paid for or payment waived, and in the absence of any restriction in the grant it carried the right to erect additional poles between those originally planted, when necessary to support the weight of added wires, required because of the increase of business, without further payment to the present owners of the abutting lands.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*]

Appeal from the Circuit Court of the United States for the District of New Jersey.

Suit in equity by the Western Union Telegraph Company against Abraham V. D. Pelhemus and others. Decree for defendants (167 Fed. 231), and complainant appeals. Reversed.

John H. Backes, for appellant.
Willard C. Parker, for appellees.

------

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before BUFFINGTON, Circuit Judge, and McPHERSON, District Judge.

BUFFINGTON, Circuit Judge. This is an appeal by the Western Union Telegraph Company from a decree dismissing a bill in equity filed by it against Polhemus and others, praying for an injunction to prevent the cutting down of certain telegraph line poles on a public road in New Jersey. The road in question is known as the "Old York Road," which antedates the Revolution and is the main highway between Philadelphia and New York. From the stipulated facts it appears that such road has since 1846 been used as a telegraph lineway by various companies which about 1880 were absorbed and succeeded by complainant. The latter then put all its wires upon one line, located practically as it is to-day, and from time to time renewed its poles and added extra cross-arms and wires to meet its needs. At the date of suit, and for many years prior thereto, such line consisted of poles set 150 feet apart, each provided with 5 cross-arms and carrying in all 38 wires. In 1903, complainant, its wires having been prostrated for 14 miles by storm, began strengthening its said line between Philadelphia and New York by planting an extra pole, with cross-arms, midway between every two poles, and has since completed the whole of such work between said cities, except for some 1,700 feet in front of the property of the respondents. At this point strengthening of the line is particularly required on account of strains caused by curves. This strengthening was reluctantly undertaken by complainant, and only because in expert opinion the same was necessary for the operation of its lines. The added poles will not interfere with the use of the highway. The respondents denied the right of the telegraph company to place these additional poles on the highway without compensation to them for the additional burden to the easement, and, not being paid therefor, chopped them down.

It will thus be observed that respondents do not question the general right of the complainant to maintain a telegraph line supported by poles along the York Road: but their objection is to the additional poles placed between the old ones. This they say is an unwarranted burden on the easement, which complainant cannot enjoy without compensation therefor to the abutting landowner. The unchallenged right of complainant to maintain a telegraph line along the York Road appeared to have been in enjoyment from a short time after the state of New Jersey, by its act of March 19, 1845 (P. L. 1845, p. 119), chartered the New Jersey Magnetic Company, the predecessor of the complainant. That act empowered the company to "construct and use a line of magnetic telegraph across the state of New Jersey for the purpose of transmitting intelligence between the cities of New York and Philadelphia, on the most eligible route," and provided:

"It shall be lawful for said company to contract for and acquire the fee simple, or any lesser interest in the lands which may be needed for said work, and when obtaining such lands or such interest therein as shall be requisite, may proceed to construct and use said telegraph, and said company may construct their said telegraph either over or under public roads * * * not interfering with the travel on said roads."

Now, the telegraph line being authorized, a recognized factor of commerce (Pensacola Co. v. Western Union Co., 96 U. S. 1, 24 L. Ed. 708), and being a public use (Western Union Co. v. Penna. R. R. Co. [C. C.] 120 Fed. 371), and having been in use all these years, it is to be presumed that the right so to do, with reference to abutting landowners, was acquired from the predecessors of these respondents who then owned the abutting lands here concerned, in which event due compensation for present and future use thereof was either paid to or waived by them; for, as was said in Brainard v. Clapp, 64 Mass. 6, 57 Am. Dec. 74, hereafter referred to:

"Where land is thus taken and paid for, for public use, the public, or those corporations who act as agents and trustees for the public, have a right to make all the use of the land which the necessity and convenience of the public may require, and that the landowner receives in damages a compensation, which in theory of law is all the indemnity for all such uses."

Such being the reasonable presumption, warranted by the long, uninterrupted, and unchallenged use of the easement, it seems that strengthening the line by additional poles was an incident to the enjoyment of the easement originally acquired. It was conducive to the advancement of the purpose for which the land was originally taken; for a company vested with the right of eminent domain is not to be restricted to such a limited exercise of that power that the public use, the full enjoyment of which alone justifies the grant of the high power of eminent domain, will be crippled in enjoyment. On the contrary, the scope of the power is commensurate with the full use of the end in view. And as in condemnation, so also, when an easement for a public use exists by grant, or presumption of grant, such grant, unless in some way restricted, is presumed to embrace every incident conducive to the entire enjoyment of the grant. In other words, as said in Newton v. Perry, 163 Mass. 321, 39 N. E. 1032:

"The purpose of the taking must fix the extent of the right. * * * The whole right is paid for without regard to the probability of its being exercised." Howe v. Weymouth, 148 Mass. 605, 20 N. E. 316; Proprietors v. Randolph, 157 Mass. 345, 32 N. E. 153.

Indeed, at an early day, Chief Justice Shaw, in Brainard v. Clapp, 64 Mass. 6, 57 Am. Dec. 74, held that the easement acquired by a railroad was—

"an appropriation of the land to all the uses of the land for the road, necessary and incidental; * * * that the right and power of the company to use the lands within their limits may not only be exercised originally, when their road is first laid out, but continues to exist afterwards. And if, after they have commenced operations, it is found necessary," etc., "to make further use of the lands, for purposes incident to the safe and beneficial occupation of the road, by," etc., "they have the right to do so to the same extent as when the railroad was originally laid out and constructed. All the reasons of necessity, propriety, and fitness which apply to the one case are equally applicable to the other."

And, referring to the broader use of the easement, he says:

"The case of railroads may be regarded as standing on somewhat stronger grounds in this respect for several reasons: Because railroads are extremely costly, and proprietors cannot in the outset make and complete all the works which they contemplate and intend to make; because these works are com-

paratively new, and improvements are constantly making in the structure and management of the works, and thus companies may profit by their own experience and that of others; and because an increase in the business of carrying passengers and freight may call for new works after the roads have gone into operation, and these are new exigencies calling for a new use of the land assigned to them."

And this future exercise of easement rights seems to have been generally followed, and was recognized in this circuit in Lake Shore & M. S. Ry. Co. v. New York, C. & St. L. Ry. Co. (C. C.) 8 Fed. 858, by Judge McKennan, who, where one railroad sought to condemn in part the easement of another, said:

"At the points of the alleged conflict, no actual encroachment upon these rights can be sanctioned or allowed; and in measuring their extent there must be a liberal consideration of the future as well as the present necessities of the complainant, touching the use of the existing tracks, the construction of additional ones, the convenient storage of its freight at all seasons, and the unembarrassed transaction of its freight business."

And in Western Union Telegraph Co. v. Pennsylvania R. R. Co. (C. C.) 120 Fed. 366, affirmed 195 U. S. 594, 25 Sup. Ct. 150, 49 L. Ed. 362, wherein it is said:

"We deem the question therein mentioned as to the future needs of a railroad in fulfilling its chartered purpose, such as should receive thoughtful regard and due consideration before it is deprived of any part of its right of way."

Now, in view of these general principles and of the existence of an easement for this telegraph line, we are clearly of opinion that the use of such additional poles as from time to time may be required to support the line is an incident to the old easement and not a new one. It would be intolerable and at variance with salutary principles of law, "ut sit finis litium," if an easement could be taken piecemeal, so to speak, and for a lesser purpose than for the entire use, for the full enjoyment of which the right of condemnation is alone conferred. If, when such taking occurred, the taker sought to limit the compensation to be paid by the fact that only a partial use was to be made of it, the law would not permit such proof (Howe v. Weymouth, supra; Proprietors v. Randolph, supra), but in the one proceeding would measure the right taken and the compensation allowed as covering the entire use possible, and therefore all incidents to such entire use. And the same reasoning is applicable to an easement by grant, unless there was some limitation to the contrary therein. And that this conclusion that additional poles, necessary to support the line, is incident to the unchallenged right to maintain a telegraph line, is our opinion; and that such construction is just and reasonable is fortified by the fact that, in the hundreds of abutting owners of property along which this line has been strengthened, none save these respondents have asserted to the contrary.

We are therefore of opinion the decree of the court dismissing this bill must be reversed, the case reinstated, and an injunction granted restraining the respondents from cutting down the complainant's intermediate strengthening poles: but it is due to the court below to add that, while the question on which this case is now decided is covered

by the stipulation of facts and was urged and argued in this court, it was not raised in the court below, and it had no opportunity to express its views thereon.

Without discussing the facts and conduct of the parties hereto in their respective acts in taking the law in their own hands, instead of resorting to courts, we award no costs to the complainant either on the appeal or the bill.